REDMANN, Judge.
This suit began as an action in lesion beyond moiety. Plaintiff alleged sale to defendant for $15,000 of an unimproved tract of land allegedly worth over $50,000.
But defendant, in answer, alleged that in addition to the $15,000, and as part consideration of the sale, defendant at the time of the purchase granted plaintiff an option to repurchase the property within six months for $20,000 “plus an amount equal to eight per cent interest from date to act of sale”. Defendant further alleged that extensions had kept the option in force past the date of filing suit.
Plaintiff testified that the “sale was intended to be a loan, a mortgage”. Wright A. Goolsby, the intermediary who brought plaintiff and defendant’s president together, understood the transaction was to be a loan. Defendant’s president testified that, an earlier check having paid off a pending mortgage foreclosure on the subject property, the check defendant issued the day of the subject transaction “represents part of $15,000 loan.”
During the course of the trial, defendant asserted its willingness to return the property to plaintiff on plaintiff’s paying defendant $15,000 plus 8% interest from defendant’s purchase plus ad valorem taxes defendant had paid.
The trial court expressed the view that this was the best construction of the origi *499 nally intended bargain and approximately the remedy plaintiff would be entitled to if she had proven her lesion case.
The court therefore asked defendants to prepare a judgment, which the court signed on March 13, 1969, and which ordered defendant to reconvey the property to plaintiff upon plaintiff’s paying, within 60 days of judgment, $15,000 plus 5% (sic) interest from date of original conveyance plus $463.91 taxes, plaintiff to pay cost of re-conveyance. The judgment provided that in default of such payment by plaintiff, defendant “is adjudged the owner” of the property. Each party was to pay its own costs.
On rule filed June 4, 1969, and on a contradictory showing that plaintiff had paid defendant nothing on account of the March 13 judgment, there was judgment on June 23, 1969 decreeing defendant the owner of the property and cancelling plaintiff’s lis pendens notice from the mortgage records.
From the June 23 judgment plaintiff sus-pensively appealed on July 3, and defendant answered the appeal seeking damages for frivolous appeal and costs in both district and appeal courts.
We note preliminarily the question whether the appeal from the June 23 judgment brings up for review the March 13 judgment. If the latter was a final judgment, it would be res judicata since no appeal was taken within the 90-day period provided by C.C.P. art. 2087. But we conclude a judgment to be effective “in default of” some action cannot be a final judgment, since the question whether the action was taken would require adjudication. The earlier, conditional judgment does not determine the ultimate merits, but is only preliminary thereto and is therefore interlocutory rather than final; C.C.P. art. 1841; see Bossier’s Heirs v. Hollingsworth & Jackson, 117 La. 221, 41 So. 553 (1906). We conclude the entire case is before us on this appeal.
We have previously noted the evidence that the parties, including defendant, considered the transaction as essentially a loan. Indeed the mere presence of its provision for interest “would have been a very awkward circumstance in adjudging this contract not to be a loan.” See Patterson v. Bonner, 14 La. 214, 235 (1839). But, unlike the frequent cases in which the basic question is whether the parties intended a sale or a security contract, here it is not disputed that this was intended to be a security contract.
Still plaintiff complained, when the judgment requiring her to pay interest at 8% from the original loan was proposed, that she should not have to pay interest for the entire period. She argues she would have paid the debt earlier except that the original mortgage, judgment and seizure, to release which she borrowed some $8,600 of the $15,000 borrowed from defendant, had not been cancelled from the mortgage records. The evidence shows that foreclosure was scheduled for sheriff’s sale on October 21, 1964, and the seizing creditor would not consent to a delay unless he was paid in full. There was insufficient time for defendant to examine plaintiff’s title before that date, and defendant therefore paid that creditor, taking an assignment of his rights. On October 26 the subject “sale” was had. Plaintiff could have elected to “repurchase” her property at any time, on which election defendant would have had to reconvey the property free of mortgage, etc., as defendant’s then counsel had advised plaintiff it was prepared to do, according to counsel’s May 4, 1965 letter to plaintiff. That letter responded to plaintiff’s April 30 letter, in which plaintiff recites that motion to dismiss with prejudice the original foreclosure suit had been 'filed April 23 and order of dismissal signed April 28. The notice of seizure was in fact cancelled May 6. While it does not appear whether the original mortgage inscription has been cancelled, the fact that the suit on the note has been dismissed with prejudice entails the ex-tinguishment of the note and therefore, C.C. arts. 3285 and 3411, the extinguish *500 ment of its accessory, the mortgage. The actual cancellation of the extinguished mortgage would have been a simple matter, even assuming it was defendant’s obligation, which is not proven; all that is clear is that defendant would have had to put plaintiff in position to effect the cancellation (as the ordinary mortgagee does by returning the paid note).
Thus we believe plaintiff’s primary problem, and a basic purpose for suing instead of merely exercising the option to “repurchase”, was that repurchase would have cost her $5,000 more. She would have been required to make a $5,000 “donation” to a local educational institution with or in which defendant’s president had some connection or interest, and which actually brought defendant’s president into the picture after it was contacted by Goolsby (who also had some connection with the institution).
Thus, under the requirements of the contract, in order to pay off the $15,000 loan and free her property of the security contract plaintiff was obliged to pay $20,000 plus interest on $15,000 at 8% from date of loan. In our opinion the circumstance that $5,000 of the $20,000 was to be paid to an intended beneficiary of the lender does not make the case distinguishable from one where the $20,000 was to be paid to the lender. The payment obligation on the $15,000 loan is in either case $20,000, plus interest on $15,000 from date of loan.
“ * * * The inquiry in all these cases is, were the advantages or remuneration stipulated for, in consideration of the loan of money, and are these advantages or remuneration greater than the rate of interest allowed by law? If the answer be in the affirmative, no matter by what shift or device this object is accomplished, no matter in what mode the payment is made, or by what terms it may be designated, the contract is usurious. * * * It is plain that the whole legislation on this subject, would be a dead letter, if on such pretexts, lenders of money could obtain a compensation for its use, greater than that they are permitted to take. * * * ” Daquin v. Coiron, 3 La. 387, 393-394 (1832).
These principles are applicable here. Except in cases governed by special laws, a lender cannot exact more than 8% per an-num interest, not even if the excess is put in the form of a required “donation” to his son or to his wife or to some charity. The contract here was usurious.
R.S. 9:3501 provides “Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.” No interest may be recovered. Berger v. DeSalvo, 156 So.2d 323 (La.App.1963), cert. denied 245 La. 86, 157 So.2d 231; Gordon Finance Co. v. Chambliss, 236 So.2d 533 (La.App.1970), cert. denied 239 So.2d 364; see also Lawrence v. Durr, 195 So.2d 337 (La.App.1967).
We reject the theory of Meadow Brook Nat. Bank v. Recile, 302 F.Supp. 62, 85 (E.D.La.1969), that where usurious interest has been stipulated and R.S. 9:3501 requires the “forfeiture of the entire interest”, the result is not forfeiture of the entire interest but only of interest before maturity, and reduction of interest after maturity to legal interest. That court’s theory was that
“The portion of the note regarding interest being null and void due to usury, it is as if the parties had not contracted at all regarding interest, and we must apply [C.C.] Article 1938 awarding interest from the date of the maturity of the note. * * * ”
C.C. art. 1938, amended in 1970, but only to increase the rate from 5% to 7%, provides :
“All debts shall bear interest at the rate of seven per centum per annum from the time they become due, unless otherwise stipulated.” (Emphasis added.)
*501 In our opinion the plain purpose of a legislative declaration of “the forfeiture of the entire interest” is defeated by substituting instead a theory that the contract does not stipulate interest and therefore legal interest is payable. This would not be a forfeiture of the entire interest, but only a forfeiture of that part of the stipulated interest above legal interest.
The forfeiture of all interest is a harsh penalty, but it is not unsuited to the practice sought to be suppressed; and it is the clear provision of R.S. 9:3501.
There is unjust impoverishment and unjust enrichment where one truly only a borrower of a sum less than his property’s value loses his property to the lender because the lender has exacted a “sale” which the impecunious borrower is unable to “redeem” timely. If the borrower is sufficiently ignorant, the lender’s “title” will never be questioned. Or if unquestioned until after the redemptive period, after which the borrower has ignorantly ceded possession to the lender as by thereafter agreeing to lease, that cession will result in construing the contract as a sale (from its inception?); Latiolais v. Breaux, 154 La. 1006, 98 So. 620 (1924).
The hope of obtaining this unjust enrichment is a very probable explanation of a Louisiana lender’s requiring sale form for a security contract on Louisiana land to secure a loan appreciably smaller in value than the land.
Perhaps some balance would be accomplished by the courts obliging such a lender to suffer in all cases the loss of all interest on his loan. In ordinary revocation of sales, only the price, without interest, is returnable to the purchaser. See C.C. art. 2586 as to sale with redemption, art. 2592 as to lesion beyond moiety, and art. 2506 as to eviction. In the present case, however, we need not consider the applicability by analogy of these articles since we reach the same result on other grounds.
We believe further balance would be accomplished by holding, where a Louisiana lender spurns legitimate Louisiana security devices — and adopts a device which might, contrary to Louisiana law not only of mortgage but also of antichresis (see C.C. art. 3179), allow the lender to become the owner on default of payment — that the Louisiana lender having rejected security has no security.
But the question appears to us not to be open to a court of appeal, in view of certain expressions of our Supreme Court in decisions such as Gautreaux v. Harang, 190 La. 1060, 183 So. 349 (1938). Gautreaux itself might be distinguishable on the ground that there the very contract recited “this sale is made to secure a debt” and it could not be said there was any attempted actual or constructive evasion, by ordinary sale form, of our laws prohibiting a secured lender from becoming by the debt contract the owner of the security. In earlier cases, such as Davis v. Kendall, 50 La.Ann. 1121, 24 So. 264 (1898), it has been held that the simulated sale does constitute a security contract, and in Davis it was held the lender thereby obtained a preference. See also Eames v. Woodson, 120 La. 1031, 46 So. 13 (1908).
The latest expression we find from the Supreme Court is Gautreaux. There the court reasoned, from C.C. arts. 3133— 3136, 3152 and 3176-3181, that a transfer of immovable property to secure a debt is an antichresis, the pledge of the property. There the contract recited the transfer to secure; here the evidence and admission is that the transfer was to secure a debt.
Therefore, in spite of the lender’s refusal to utilize a Louisiana security device, we feel obliged to hold that the effect of the sale and option to repurchase here is an antichresis.
When the antichresis creditor is not timely paid, “it is only lawful for him to sue his debtor before the court in order to obtain a sentence against him, and to cause the objects which have been put in his hands in pledge to be seized and sold”, C.C. art. 3179. Even so, the antichresis creditor *502 “can not have any right of preference on the other creditors * * * ”, art. 3181. The only security rights of the antichresis creditor are his entitlement to reap the fruits or revenues of the property, art. 3176, and to retain possession until the debt is paid, art. 3178.
While there is an answer to the appeal, there was no reconventional demand and we therefore cannot render a judgment in favor of defendant for the amount of the loan (and taxes plaintiff agreed to pay, C.C. art. 3177). Defendant of course retains its right to sue, if necessary, for these items.
Because of plaintiff’s ordering of many unjustified subpoenas in the trial court, we will not disturb that court’s judgment ordering each party to pay his own costs in that court.
Accordingly the judgment appealed from is, in substance, in part affirmed and in part reversed, and is recast as follows:
It is ordered, adjudged and decreed that the act of sale dated October 26, 1964, registered in Jefferson Parish Conveyance Office Book 602, fo. 131, by Mrs. Anna. B. DeSalvo to Finance Funds Group, Inc., of the following described property:
“A CERTAIN TRACT OF LAND, situated in the Parish of Jefferson, in that part thereof known as Third Jefferson Drainage District, which tract of land is designated as Tract D on a plan of survey of H. E. Landry, Sr., Civil Engineer and Surveyor, dated April 11, 1957, which tract is composed of the following plots:
“Tract D consists of Plots Nos. 801 through 810, both inclusive, Third Jefferson Drainage District, and contains 182,000 square feet, more or less.
“Being the same property acquired by Anna Shirley Burglass, divorced wife of Joseph DeSalvo, as per act of partition passed before Nathan Greenburg, Notary Public, Parish of Jefferson, dated August 7, 1957, registered in COB-430 folio 603.”
is declared to be without effect as a sale and to constitute only an antichresis of the property in favor of Finance Funds Group, Inc., to secure repayment without interest of a loan of $15,000 due by Mrs. DeSalvo to Finance Funds Group, Inc.
It is further ordered, adjudged and decreed that there is judgment in favor of Mrs. Anna Shirley Burglass, divorced wife of Joseph DeSalvo, now wife of Howard Dunker, and against defendant, Finance Funds Group, Inc., for the costs of this appeal; each party to pay his own costs in the trial court.
Affirmed in part; reversed in part; judgment recast.