398 So.2d 190 (1981)
G. P. SMITH et al., Plaintiffs-Appellees,
v.
Sam DUCOTE, Defendant-Appellant.
No. 8184.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1981.
Rehearing Denied May 28, 1981.
*191 Gaharan & Wilson, Donald R. Wilson, Jena, for defendant-appellant.
Michael Johnson, Cottonport, for plaintiffs-appellees.
Before GUIDRY, SWIFT and LABORDE, JJ.
SWIFT, Judge.
The Small Business Administration (SBA) acquired a tract of land of over 100 acres with improvements in Avoyelles Parish in the bankruptcy proceeding of defendant, Sam Ducote, and sold it to the plaintiffs, G. P. Smith and wife, for $62,500.00 at an auction on March 15, 1979. Prior to the auction Ducote, desiring to get his property back, had approached Smith and his father and discussed obtaining a loan for such purpose. The record does not disclose just what their agreement was or who was to buy the land at the SBA sale (both Smith and Ducote appear to have bid at the auction), but it is clear that Ducote deposited in escrow with the Smiths' attorney $15,000.00 to be used in this connection and also paid them some $3,024.48 which G. P. Smith classified as "interest" on money Smith had in escrow before he acquired the property from the SBA and as "rent" thereafter as Ducote was occupying same. On the day of the auction Ducote gave Smith $7,500.00 more.
The testimony reflects that plaintiffs' attorney prepared a set of papers that apparently conveyed the property to Ducote by a credit transaction wherein the latter was to execute a note to plaintiffs for $40,000.00 which their counsel contends provided for interest from date at 22.75% per annum payable in installments over a period of seven years. However, these documents are not in the record. Be that as it may, before they were executed the parties were advised by another lawyer that such transaction was usurious and illegal. He then prepared a credit sale with a note secured by a vendors' lien and mortgage which are the subject of this controversy.
The deed from the plaintiffs to defendant is dated April 18, 1979, and recites a price of $102,765.36 of which $22,500.00 had been paid in cash and for the balance of $80,265.36 the purchaser executed a note payable in 84 monthly installments of $955.54 commencing May 25, 1979. It provided interest at 10% per annum from maturity and attorney's fees of 15% for collection in the event of default.
*192 There was considerable disagreement between the Smiths and Ducote about this matter prior to and at the time of the auction and also thereafter. Ducote testified that he tried to get out of the arrangement, but was told by the Smiths several times that if he did he would lose all of the money he had put up. On the other hand, G. P. Smith denied this and testified he offered Ducote his money back before and after he purchased the property because he wanted to keep it as an investment. He said he told Ducote he would sell it to him only if the latter put up at least $22,500.00 as the down payment and Smith could make a $40,000.00 profit over a seven year period; whereupon Ducote got the additional $7,500.00 and gave it to him.
Their disagreement continued until the documents were finally executed by the parties on April 18, 1979. Mr. Ducote contended he did so only because he was going to forfeit his $22,500.00 and also he and his children needed a place to live. He admitted, however, that before the documents were signed he discussed the matter with his own attorney, who advised him that they could not keep his money and he should not complete the transaction. Ducote said he understood though that this would cost "a good portion of the money" for litigation.
The plaintiffs filed this suit on the note and mortgage on February 27, 1980, alleging that defendant failed to pay the installment due on February 25, 1980. The defendant denied the alleged default and further contended that the note charged a usurious interest rate which caused forfeiture of all interest, including that capitalized in a face amount of the note, that the note was given for an inadequate consideration and the transaction was also invalid for lack of defendant's free and willing consent resulting from adhesion and duress. He reconvened for recission of the transaction, for return of all payments made by him as a part of the purchase price and the cost of improvements allegedly made by him since acquisition of the property on April 18, 1979.
After trial on the merits the trial judge rendered judgment in favor of the plaintiffs in the sum of $71,665.50 with interest of 10% per annum from February 27, 1980, and $10,749.83 as an attorney fee and ordered that the mortgage be ranked according to law. From this judgment the defendant has appealed.
The first issue to be resolved is whether the contract of sale is invalid for want of Ducote's free and knowledgeable consent.
Upon consideration of the conflicting testimony as to forfeiture of defendant's advances the trial judge believed either that Smith did not make the statements which Ducote related or if he had they did not constitute sufficient duress to force the latter to consummate the sale. We agree with this determination of these factual issues. Despite his characterization of the contract as "harsh", the judge stated in his oral reasons that Ducote was a businessman and not a novice that had signed the contract. Nothing in the record indicates that the defendant was not fully apprised of all of the facts involved and he discussed the entire matter with his attorney prior to consenting to the sale. We conclude that Ducote's consent to the contract of sale was not vitiated by any misrepresentation or threat on the part of Smith.
Next, we will consider defendant's contention that he was not in default when plaintiffs filed the suit on February 27, 1980. There is also a conflict in the evidence as to when Smith received the check for the February 25th installment. Again the trial judge apparently believed Mr. Smith's version of this factual dispute. We certainly cannot say that he was clearly wrong in his determination that this installment was not paid timely. Therefore we must conclude that Mr. Ducote was in default when this suit was instituted.
Now we turn to the issue of whether the transaction involved usurious interest. Mr. Ducote claims that the agreed price of the sale was $62,500.00 instead of $102,765.36 and that the difference of $40,265.26 was capitalized interest at the rate of 22.75%.
*193 He also contends that the prior payments of $3,024.48 heretofore mentioned constituted usurious interest.
Defendant concedes that capitalization of interest in the face amount of a note at more than 8% per annum is permitted by LSA-C.C. Article 2924, provided the obligation does not bear more than 8% per annum interest after maturity. General Securities Company v. Jumonville, 216 La. 681, 44 So.2d 702 (1950); Karmgard v. Southland Mortgage and Title Company, 341 So.2d 1109 (La.1977). However, he argues that such provision of the codal article is inapplicable in this instance, because Ducote's note provides for 10% interest after maturity. We would be inclined to agree with defendant's position if it had been established that the involved parties had agreed that the price of the sale from the Smiths to Ducote was $62,500.00. However, from our review of the record we are unable to find that the parties ever agreed on a price for such a sale until it was finally consummated by the execution of the note and deed on April 18, 1979.
As mentioned above, it is not clear just what the parties agreed to at first, but from the testimony of both G. P. Smith and Ducote it appears the original understanding had fallen through when Mr. Smith made the high bid and purchased the property at the auction. Thereafter, Smith agreed to sell the property to defendant if he would give him an additional $7,500.00 for the down payment and a profit of some $40,000.00. While the papers were being drafted and redrafted Ducote considered and finally agreed to purchase at the price set forth in the deed and according to its terms. Under the circumstances we are unable to conclude that the face amount of the note included a capitalization of interest and the purchase price rather than simply the purchase price agreed upon by the parties which included the Smiths' profit. The party who pleads the affirmative defenses of usury or mistake and error has the burden of proving such defenses. All State Credit Plan Jefferson, Inc. v. Daniels, 239 So.2d 470 (La.App. 4 Cir. 1970), writ refused 256 La. 1159, 241 So.2d 256 (La.1970).
The proof offered also falls short of establishing that the prior payments by Ducote to Smith of "interest" or "rent" constituted usurious interest with respect to the sale finally consummated.
We do agree with defendant's contention that the 10% interest rate from maturity provided in the note is usurious.
Civil Code Article 2924 provides that conventional interest cannot exceed 8%. An exception to this article is LSA-R.S. 9:3503 which at the time of the sale provided as follows:
"Notwithstanding any other law to the contrary, particularly but not exclusively Louisiana Civil Code Article 2924, the amount of simple conventional interest on obligations bearing interest from date and secured in whole or in part, directly or indirectly, by a mortgage on immovable property, shall not exceed ten percent per annum. The same must be fixed in writing; testimonial proof of it is not admitted in any case." (Emphasis added.)[1]
Since the statute specifically limits its application to obligations bearing interest from date and the note in this case bears interest at 10% from maturity, we conclude that the interest rate violates Article 2924 and is therefore usurious.
LSA-R.S. 9:3501 provides:
"Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted." (Emphasis added.)
Thus, the Smiths must forfeit the 10% interest after maturity of the note which they contracted. However, they are entitled to legal interest on the unpaid principal from maturity of the debt. LSA *194 C.C. Article 1938; Green v. Johnson, 14 La.App. 110, 129 So. 384 (2 Cir. 1930); Meadow Brooks National Bank v. Recile, 302 F.Supp. 62, 85 (U.S.D.C., E.D.La.1969).
For the foregoing reasons, the judgment of the district court is amended so as to award interest at 7% per annum from February 25, 1980, on the principal indebtedness. Otherwise, it is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED AS AMENDED.
NOTES
[1] Legislative Act 205 of 1979, effective July 6, 1979, increased the interest rate from 10% to 12%.