487 So.2d 165 (1986)
Dominic S. BONFANTI, Plaintiff-Appellant-Appellee,
v.
James D. DAVIS, Defendant-Appellee-Appellant.
No. 85-20.
Court of Appeal of Louisiana, Third Circuit.
April 18, 1986.
*166 Shows, Clegg & Cohn, David M. Cohn, Baton Rouge, for plaintiff-appellant-appellee.
W.T. Armitage, Jr., Alexandria, for defendant-appellee-appellant.
Before GUIDRY, FORET and HOOD[*], JJ.
FORET, Judge.
This is a suit on a written lease. Plaintiff, Dominic Bonfanti, filed suit against defendant, James Davis, seeking past-due rent, interest on that rent, and attorney's fees. The trial court rendered judgment in favor of plaintiff for past-due rent and $1,000 in attorney's fees, but denied recovery of any interest. Both plaintiff and defendant appealed and have raised several issues:
(1) Whether the lease was void for lack of a certain and definite price;

*167 (2) Whether plaintiff was entitled to legal interest on the past-due rental installments;
(3) Whether plaintiff was entitled to the full amount of attorney's fees stipulated in the lease;
(4) Whether the court abused its discretion in failing to tax as costs of court the expert witness fee of one of plaintiff's witnesses.

FACTS
Plaintiff, Dominic Bonfanti, leased immovable property to defendant, James Davis, and several other lessees. The lessees intended to operate a commercial establishment on the premises and apparently did so for a time.
Under the terms of the lease, all of the lessees bound themselves in solido for its performance. The lease was for a period of 43 months beginning March 1, 1979 and ending September 30, 1982. The lessees failed to pay any rent due after October 1, 1981. However, the premises were turned over to plaintiff and re-let beginning August 1, 1982[1].
Under the lease, the rent due from March 1, 1981 to February 28, 1982 was $1,000 per month "plus an amount equal to any increase in the Cost of Living Index over the Base Index in existence as of January 1, 1980." The rent due for the remaining period of the lease was also set at $1,000 per month plus an amount equal to any increase in the cost of living index over the base index. In the event it was necessary for plaintiff to institute legal proceedings for any rental payments, the lease provided for an attorney fee of 25% of the amount collected in connection with that litigation.

VALIDITY OF THE LEASE
The price is a necessary element of a lease and must be certain and determinate. LSA-C.C. art. 2671. Here, the lease provided, in pertinent part:
"... rental for the next twelve (12) months of this sub-lease from March 1, 1981 to February 28, 1982, shall be ONE THOUSAND AND NO/100 ($1000.00) DOLLARS per month payable in advance on the 1st day of each month beginning March 1, 1981 plus an amount equal to any increase in the Cost of Living Index over the Base Index in existence as of January 1, 1980; rental for the remaining period from March 1, 1982 to September 30, 1982 shall also be ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS per month payable in advance on the 1st day of each month beginning March 1, 1982, plus an amount equal to any increase in the Cost of Living Index over the Base Index in existence as of January 1, 1980."
Under the lease, the rent included an amount based on any increase in the cost of living index. Such a stipulation will not render the rent uncertain if the amount can be readily ascertained and determined from facts or circumstances not within the control of the parties. Mouton v. P.A.B., Inc., 450 So.2d 410 (La.App. 3 Cir.1984). Here, the gravamen of defendant's contention is that the rental is uncertain because there exists two cost of living indexes (C.P. I.): The All Urban Consumers' Index and the Urban Wage Earners and Clerical Workers' Index. The lease did not specify which index would be used to calculate excess rental. Although the difference between the two indexes is not great, it does fluctuate from year to year.
In point of fact, plaintiff's accountant actually used the Urban Wage Earners and Clerical Workers' C.P.I. Use of this index resulted in a slightly lower figure than would have resulted from the use of the All Urban Consumers' C.P.I. In a letter dated April 13, 1981, plaintiff informed defendant that due to a rise in the cost of living index, the rent for the period between March 1, 1981 and February 29, 1982 would be $1,128. In this letter, plaintiff set forth the C.P.I. figures used and informed defendant of sources from which he could *168 obtain the index figures. Defendant paid this rent without protest.
Defendant is an attorney, and the lease he entered into was for commercial purposes. He was certainly not an unsophisticated layman. The difference in the rent which would have resulted from the use of one or the other C.P.I. was extremely small. The C.P.I. defendant used resulted in a smaller increase in the rent than would have resulted from the use of the other C.P.I. Moreover, plaintiff informed defendant of the actual figures used to compute the increase in April of 1981. Under the circumstances, we find that the rent was not so indeterminate as to nullify the lease.
Additionally, we note that the term of the lease began on March 1, 1979 and was to run until September 30, 1982. The rentals due under the lease were apparently never questioned until payments ceased during the latter part of 1981. At that time, the major portion of the lease's term had already expired and the lease had less than one year to run. A decision to void the lease at such a late date would unfairly penalize plaintiff. As we have already said, plaintiff had in fact informed defendant of the C.P.I. figures actually used to compute the increase in rent, and defendant had paid the rent so computed without protest. Under the circumstances, a reasonable interpretation of the intentions of the parties leads to the conclusion that they intended that the increase in rent be based on the increase in the Urban Wage Earners and Clerical Workers' C.P.I. Where a contract is capable of construction in accordance with justice and fair dealing, courts will adopt such a construction instead of one entailing loss to a party to the contract. Haymon v. Holliday, 405 So.2d 1304 (La. App. 3 Cir.1981).

INTEREST DUE UNDER THE LEASE
The lease provided for 18% per annum simple interest on past rental installments not paid when due. At the time the lease was entered into, LSA-C.C. art. 2924 provided that the maximum rate of conventional interest could not exceed 8% per annum[2]. Clearly, the interest as provided by the lease was usurious.
Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted. LSA-R.S. 9:3501. In Smith v. Ducote, 398 So.2d 190 (La.App. 3 Cir.1981), writ refused, 405 So.2d 531 (La. 1981), we held that even when contractual interest is forfeited under R.S. 9:3501, the creditor is still entitled to legal interest from date of maturity of the indebtedness. This decision, however, appears to be in conflict with an earlier Supreme Court decision, Thrift Funds of Baton Rouge, Inc. v. Jones, 274 So.2d 150 (La.1973)[3]. In Thrift Funds, the Court decided that R.S. 9:3501 required the forfeiture of all interest, whether such be stipulated interest, capitalized interest, or other charges for the use of or the delay in paying money, however so denoted. The clear import of Thrift Funds, authored by the late Justice Albert Tate, was that the penalty for the exaction of illegal interest was the forfeiture of all interest. The conclusion of the court in Thrift Funds appears correct in light of the statutory provisions. LSA-C.C. art. 1940, in effect at that time[4], provided that legal interest shall be recoverable "where *169 no conventional interest is stipulated." There was and still is, no statutory authorization for the recovery of legal interest where, in fact, conventional interest is stipulated.
The position of the court in Thrift Funds, however, conflicts with an earlier Supreme Court case, Tarver v. Winn, 18 La.Ann. 557 (1866). In Tarver, the Louisiana Supreme Court ruled that a provision stipulating usurious interest was null and void. Therefore, it concluded that an agreement containing such a provision should be treated as if no rate was stipulated in the contract and legal interest should apply. Without making reference to it, we followed the Tarver decision in Smith v. Ducote, supra. The Tarver approach has been criticized. See 44 LLR 1067 (1984).
In De Salvo v. Finance Funds Group, Inc., 252 So.2d 498 (La.App. 4 Cir.1970), the Fourth Circuit criticized the Tarver approach, although it did not specifically refer to Tarver. The court cited the cases of Berger v. DeSalvo, 156 So.2d 323 (La.App. 4 Cir.1963), cert. denied, 245 La. 86, 157 So.2d 231 (1963); Gordon Finance Co. v. Chambliss, 236 So.2d 533 (La.App. 4 Cir. 1970), cert. denied, 256 La. 869, 239 So.2d 364 (1970); and Lawrence v. Durr, 195 So.2d 337 (La.App. 4 Cir.1967). De Salvo stated, at page 500:
"We reject the theory of Meadow Brook Nat. Bank v. Recile, 302 F.Supp. 62, 85 (E.D.La.1969), that where usurious interest has been stipulated and R.S. 9:3501 requires the `forfeiture of the entire interest', the result is not forfeiture of the entire interest but only of interest before maturity, and reduction of interest after maturity to legal interest."
[This is the Tarver rule.]

De Salvo went on to say:
"In our opinion the plain purpose of a legislative declaration of `the forfeiture of the entire interest' is defeated by substituting instead a theory that the contract does not stipulate interest and therefore legal interest is payable. This would not be a forfeiture of the entire interest, but only a forfeiture of that part of the stipulated interest above legal interest.
"The forfeiture of all interest is a harsh penalty, but it is not unsuited to the practice sought to be suppressed; and it is the clear provision of R.S. 9:3501."
We are in full accord with De Salvo. We are confident in this position for the further reason that, at the present time, the maximum legal rate of interest and judicial interest are now the same, i.e., 12% per annum. Accordingly, we decline to follow our decision in Smith v. Ducote which allowed the creditor to recover legal interest from the date of maturity of the obligation. In the present case, for reasons stated above, plaintiff must forfeit all interest, except legal interest from date of judicial demand. Since the trial court did not award interest of any kind, we will amend its judgment to allow legal interest from date of judicial demand.
Defendant did not specifically plead usury as a defense to plaintiff's suit. Plaintiff argues that usury is an affirmative defense and that, as such, it could not be proven over a timely objection. While this is a true statement of the law, evidence relating to the contractual provision providing for usurious interest was introduced by plaintiff himself. Having put this evidence before the court in an effort to recover the usurious interest, plaintiff cannot now ask the court to ignore this evidence insofar as it might weigh against him. A party to a suit cannot escape the legal effect of what he has proven because that effect is something other than what he contemplated or desired.

ATTORNEY'S FEES
Plaintiff contends that the trial court did not have authority to inquire into the reasonableness of the attorney's fees stipulated in the lease, and that the court erred when it failed to award to plaintiff, as an attorney fee, 25% of the amount collected. In recent years, the question of whether a *170 trial court can inquire into the reasonableness of contractually stipulated attorney's fees has been addressed by both our Supreme Court and the legislature. In Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), our Supreme Court held that, despite a provision in a promissory note stipulating attorney's fees, courts could inquire into the reasonableness of the fee. Apparently in response to this decision, the legislature amended LSA-C.C. art. 1935 by Act 483 of 1983 and added a concluding sentence to the article. After the amendment, the article provided:
"The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more. But where the parties, by contract in writing, have expressly agreed that the debtors shall also be liable for the creditors attorney fees in a fixed or determinable amount, the creditor is entitled to that amount as well." (Emphasis ours.)
Leenerts Farms had held that under our law contractually provided attorney's fees were not stipulated damages due the creditor. In enacting the 1983 amendment, the legislature seems to have intended to overrule the Leenerts Farms decision by expressly providing that attorney's fees fixed by contract were due the creditor.
In 1984, the legislature repealed and reenacted Art. 1935, incorporating its substance into C.C. art. 2000. In the process, the provision relating to attorney's fees was discarded. In December of 1985, our Supreme Court again considered the question of whether a court could inquire into the reasonableness of attorney's fees. In Graham v. Sequoya, 478 So.2d 1223 (La. 1985), the Court considered a provision in the note which stipulated attorney's fees. The note had been executed in 1976, and suit had been brought on the note in 1983, some two months before the 1983 amendment to C.C. art. 1935 became effective. The Supreme Court held that the 1983 amendment was not retroactive and therefore did not apply to the case before it. The Court expressly did not consider the constitutionality of the amendment.
The Graham decision, however, did not address the effect of the latest amendment to the reenacted C.C. art. 1935, now C.C. art. 2000. By Act 137 of 1985, effective July 3, 1985, the legislature added essentially the same provision relating to attorney's fees to Art. 2000 that the 1983 amendment had added to Art. 1935. This time, however, the legislature expressly provided for the amended article's retroactive application. Given the legislature's express intention that the amendment have retroactive effect, we feel compelled to render our decision in the present case in accordance with the dictates of Art. 2000, as amended. Defendant in the instant case has not called into question the constitutionality of the 1985 amendment to Art. 2000 nor the 1983 amendment to Art. 1935. Accordingly, we find that the trial court erred in failing to award plaintiff attorney's fees as stipulated in the lease. The lease provided for attorney's fees equal to 25% of the amount collected in this litigation. The court awarded $11,710.45 in past-due rentals and, accordingly, we will amend the judgment of the trial court to award attorney's fees to plaintiff in the amount of $2,927.61.

EXPERT'S FEES
During the course of the trial, Thayer Borell, a C.P.A., testified on behalf of plaintiff. Despite a request by plaintiff's attorney, the trial court did not tax as costs of the proceeding an expert witness fee for Mr. Borell and, in fact, made no mention of plaintiff's request. This failure on the trial court's part must be viewed by us as a denial of plaintiff's request.
The trial court has discretion to tax as costs of a proceeding expert witness fees, and his award in this respect will not be disturbed absent an abuse of that discretion. Here, the trial court's decision not to tax Mr. Borell's expert witness fee as costs of the proceeding was well within the discretion granted by law. On direct examination, Mr. Borell testified as to the method he used to compute the amount due *171 under the lease. These computations were made by him at the time these payments became due and not in contemplation of trial. Throughout the whole of his testimony on direct, Mr. Borell was not testifying as an expert. He was not giving the court the benefit of his expert opinion, but only testified as to what he had in fact done to calculate the amounts due under the lease. In point of fact, it was not until after he had finished his testimony on direct that the plaintiff's attorney undertook to qualify him as an expert. Under the circumstances, the trial court's decision not to tax Mr. Borell's fee as costs of the proceeding was not an abuse of discretion.

DECREE
For the foregoing reasons, the judgment of the trial court is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that plaintiff be awarded the amount of $2,927.61 in attorney's fees; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein awarding plaintiff legal interest from date of judicial demand.
In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed against defendant, James D. Davis.
AFFIRMED, AS AMENDED.
NOTES
[*] Judge Warren E. Hood, of the 14th Judicial District Court, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Plaintiff only seeks past-due rent for the period from October 1, 1981 to July 1, 1982.
[2] Subsequent amendments to Art. 1935 have made it inapplicable to commercial transactions. These amendments, however, are not retroactive.
[3] The Thrift Funds discussion of this point is apparently dicta since the court held that the, now repealed, Louisiana Small Loan Law (La. R.S. 6:571-593), was applicable and voided the entire loan, principal and interest.
[4] C.C. art. 1940 was supplanted by C.C. art. 2000, which became effective July 3, 1985. The redactors' comments state that:

"This Article is new. It changes the law insofar as it establishes that, when a rate of interest has not been agreed upon, the measure of damages for delay in performing an obligation to pay a sum of money shall be the legal rate of interest in force at the time the sum of money is due. Otherwise, this Article reproduces the substance of C.C. Arts.... 1940 ....." (Emphasis ours)