FORET, Judge.
This is a suit for specific performance of a real estate development agreement. Plaintiff, Ronald J. Foreman, Executor of the Succession of J.Y. Foreman, sued to specifically enforce the agreement by having J. Boring Montgomery[1] and Michael Montgomery[2] sell certain property located in Lafayette Parish. This case was tried before a jury. On the basis of the jury’s answers to four interrogatories, the trial court ordered defendants to convey to plaintiff all of their interest in Boring Woods Subdivision. Again based on the jury’s answers to the interrogatories, the trial court refused specific performance with respect to a certain tract known as the “Red Barn” property.
Defendants appealed that portion of the trial court’s judgment which ordered specific performance. Plaintiff answered the appeal, seeking a reversal of the trial court’s judgment insofar as it denied specific performance with respect to the “Red Barn” property[3].
This appeal raises the following issues:
(1) Whether the real estate development agreement is defective and unenforceable because the price stipulated in it is not certain;
(2) Whether the agreement is defective and unenforceable for failure to specify a term;
(3) Whether specific performance is not available because complete performance is not possible by defendants, who do not have title to all of the property covered by the agreement;
(4) Whether the trial court committed reversible error by excluding parol evidence regarding the contract;
(5) Whether the trial court erred in dismissing defendants’ reconventional demand as a result of its decision to exclude evidence which it held was inadmissible under the dead man statute;
(6) Whether the trial court erred in refusing to order specific performance with respect to the property known as the “Red Barn” property; and
(7) Whether plaintiff, executor of the Estate of J.Y. Foreman, is entitled to receive only a 50% interest of any property subject to specific performance because all rights arising under the agreement were community property belonging one-half to the deceased and one-half to his widow.
FACTS
In March of 1973, J.Y. Foreman entered into a real estate development agreement with James Boring Montgomery, M.D.; Michael Montgomery; and other members of the Montgomery family[4]. Under this contract, the Montgomerys agreed to list exclusively with J.Y. Foreman three adjacent blocks of property located within the City of Lafayette. J.Y. Foreman agreed to develop the property into residential subdivisions and, in doing so, to maximize the number of marketable lots. Foreman agreed to pay all costs of the development. For their part, the Montgomerys agreed to sell the lots laid out by Foreman for $40 per “running foot” and undertook the obligation of executing any act of sale necessary to transfer the property. Under the agreement, Foreman was expressly empowered to buy or sell any lot for whatever *1283 price he chose provided that the owners were paid the stipulated $40 per “running foot.” The term of the “listing” was fifteen years with an option on the part of Foreman to renew the agreement for an additional ten years. The agreement was expressly heritable and assignable.
At the time of trial, much of the property covered by the agreement had already been sold, either in accordance with the agreement or in accordance with some ' other arrangement reached by the parties to the agreement. Plaintiff only sought specific performance with regard to the property which remained unsold. This included a number of lots in Boring Woods Subdivision and a small parcel of land known as the “Red Barn” property. The “Red Barn” property is located on the corner of one of the blocks of land and, as its name indicates, was the site of a barn which Dr. Boring Montgomery used to house horses. Boring Woods Subdivision was developed out of another of the three blocks of land. The plat for Boring Woods was executed and dedicated in 1975 and signed by each of the owners.
Sale of the lots in Boring Woods continued for some six years with the Montgom-erys conveying title and J.Y. Foreman paying the price as stipulated in the agreement. It was only in 1979, after the death of J.Y. Foreman, that Dr. Montgomery became reluctant to abide by the terms of the agreement, eventually refusing to convey title to any of the property included in it. Ultimately, plaintiff filed suit seeking to have the agreement specifically enforced.
CERTAINTY OF THE PRICE
The agreement specified that the price Foreman was to pay to the Montgomerys was $40 per “running foot” for every lot sold. Defendants contend that the price thus stated was not sufficiently certain. We do not agree.
We have previously had the opportunity to construe this agreement. In Montgomery v. Foreman, 410 So.2d 1160 (La.App. 3 Cir.1982), where the issue was one of heritability of the agreement, we held that the agreement was a mandate coupled with an interest. As we recognized there, the agreement grants Foreman a “virtual option” to purchase. An option, when accepted, ripens into an agreement to sell which either party may specifically enforce. Bankston v. Estate of Bankston, 401 So.2d 436 (La.App. 1 Cir.1981), writ denied, 406 So.2d 627 (La.1981); LSA-C.C. art. 2462. However, for specific performance to be available, there must exist reciprocal consent of both parties as to the thing, the price, and terms. LSA-C.C. art. 2462.
As one basis for the claim that the price is not sufficiently certain, defendants assert that the term “running foot”, is ambiguous. Although we agree that the term is ambiguous, based on the subsequent actions of the parties, we have no difficulty in concluding that what the parties meant by the term “running foot” was what is more commonly referred to as “front foot.” A doubtful provision in an agreement must be interpreted in light of the parties’ subsequent conduct. LSA-C.C. art. 1956 (1870)[5]. Numerous sales of lots were made under the agreement, and the price paid to the Montgomerys was always calculated at $40 per front foot. The subsequent actions of the parties was sufficient to resolve any ambiguity surrounding the term “running foot.”
Defendants also claim that the price was uncertain because the number of front feet was not determinable at the time the contract was entered into, but only after J.Y. Foreman had drawn up the development plans. Admittedly, at the time the agreement was entered into, there was some uncertainty with respect to the price since it depended upon the number of front *1284 feet which would be produced once the property was divided into lots. J.Y. Foreman did have some discretion in drawing up these plans, although we do not believe it was unfettered as defendants have claimed. Despite this uncertainty with respect to price which existed at the time the agreement was entered into, plaintiff is not precluded from obtaining specific performance of the agreement. The trial court only ordered specific performance of the agreement with respect to lots located in Boring Woods Subdivision. As we have previously pointed out, the plat for this subdivision was signed by all the property owners in 1975. Whatever uncertainty as to price might have existed up to that time was ended at that moment. Given the plat as approved by the property owners, the price of any and all lots in Boring Woods Subdivision could have been arrived at mechanically. For some six years, the Mont-gomerys sold numerous lots in Boring Woods Subdivision for a price calculated in accordance with the agreement and the plat. J.Y. Foreman performed his obligations under the agreement, developing Boring Woods Subdivision and arranging the sales of the lots. Under the circumstances, the only reasonable interpretation is that the parties intended the price to be that price which is arrived at by construing the agreement in conjunction with the plat. Tq hold otherwise would unfairly penalize Foreman, who has fulfilled his obligations under the agreement. See Bonfanti v. Davis, 487 So.2d 165 (La.App. 3 Cir.1986).
Defendants also contend that the price was uncertain because the agreement left open whether the price would be in cash or on credit. Defendants point to the following language of the agreement:
“The Agent is expressly empowered to buy or sell any lot involved herein for such price and under such terms and conditions as the Agent may deem fit and proper; provided the said Owners are to be paid the price per running foot hereinabove established at the time of the sale of any lot involved herein.
The Agent and Owners may, through mutual consent, enter into credit sale agreements under which terms the Owners receive payment at the above stated price at a future date or through future installments.”
The last sentence only provides that credit may be extended if the two parties subsequently agree. Absent such mutual agreement, the payment must be in cash. This additional language, in fact, adds nothing to the agreement, since even absent such a stipulation, the parties could have agreed to modify the terms of the agreement to allow credit.
UNCERTAINTY OF THE TERM
The agreement provides for its term in the following language:
“It is further understood and agreed by all parties hereto that the said Owners list the hereinabove described property exclusive with the said Agent for a period of fifteen (15) years from date of this contract with an option on the part of the Agent to renew this agreement under the same terms and conditions described herein for an additional ten (10) years. The Owners hereby acknowledge that the consideration for this listing shall be the payment of the improvements as well as the development cost of said property by the said Agent, in addition to other consideration hereinabove mentioned.”
Defendants contend that the agreement is, in effect, two different agreements: a listing agreement and an option. Defendants argue that the above quoted language only provides a term for the listing agreement and not for the option. As a result, they maintain that the option, having no term, is not enforceable by way of specific performance.
Despite the specific reference to “listing,” we feel that the quoted language is clearly intended to establish a term for the entire agreement. In providing for a renewal of the agreement and additional term of ten years, the subject of the renewal is specifically provided to be “this agree *1285 ment under the same terms and conditions described herein.” Nor do we find any intention to create two separate agreements. Rather, the intent of the parties clearly appears to be to create one unified agreement with reciprocal rights and obligations. We believe that the parties intended that the term of the entire agreement, option included, be fifteen years with a right to renew for an additional ten years.
SPECIFIC PERFORMANCE AND THE IMPOSSIBILITY OF COMPLETE PERFORMANCE BY DEFENDANTS
At trial, it was shown that portions of four of the unsold lots in Boring Woods Subdivision were owned by individuals who were not parties to the agreement. Defendants contend that since it is impossible for them to convey title to these portions of those lots, the agreement is not specifically enforceable, in whole or in part. Defendants cite Triplett v. Ferina, 432 So.2d 1128 (La.App. 3 Cir.1983), to support their contention. In Triplett, the defendant executed an option in favor of the plaintiff, agreeing to sell a parcel containing approximately 80 acres. In fact, defendant owned a one-quarter undivided interest in a 320-acre tract, and it was his intention to partition the property and thereby acquire the 80-acre tract. Defendant was unable to obtain a partition of the property. When plaintiff sued for specific performance, the court ordered defendant to convey his one-quarter interest in the 320-acre tract. In Triplett, we held that since the defendant was incapable of delivering legal title to the 80-acre tract, plaintiff was not entitled to specific performance. We reasoned that the trial court could not order the defendant to convey a one-quarter interest in the 320-acre tract because this would be, in effect, changing the object of the contract which was a full interest in an 80-acre tract. The present case is distinguishable from Triplett. The interest owned by the third parties is not an undivided interest. More importantly, the trial court’s judgment ordering defendants to convey their interests in the lots remaining unsold in Boring Woods Subdivision does not change the object of the contract. The agreement, itself, did not anticipate an all or nothing arrangement, i.e., requiring the parties to convey all of the property or none of it. Rather, it contemplated the parceling up of the property and the selling of portions of it over time, with Foreman having the right to buy or sell such portions as he saw fit (while using his best efforts to develop the property). The agreement allowed for the conveyance of less than all of the property.
Defendants also contend that plaintiff has no right to specific performance since part of the property included in the agreement was owned, at the time the agreement was confected, by June Montgomery Miles, who was not a party to the agreement. Therefore, they reason, they were unable to deliver merchantable title to the property which was the subject of the agreement. To conclude their argument, they point to paragraph 12 of the agreement which states: “The owners shall tender a legal, valid and merchantable title to the hereinabove described property, in the absence of which this agreement shall be null and void.” Defendants conclude that the agreement was null and void. Plaintiff, however, does not seek performance with regard to the property owned by June Montgomery Miles and claims that it was never intended by the parties that this property be subject to the agreement. The property in question is located on one end of the tract off of which Boring Woods Subdivision was developed. We agree with plaintiff that the parties to the agreement never intended to include this property. As a result, defendants’ lack of title to it was irrelevant and could not result in the nullity of the agreement.
EXCLUSION OF PAROL EVIDENCE
On a number of occasions, the trial court excluded parol evidence concerning the agreement. Defendants maintain that the parol evidence was admissible to show error and fraud. Even for such purposes, parol evidence is admissible only when the testimony in support of the allegations of *1286 error or fraud is clear and convincing. Hatch v. Morgan, 12 So.2d 476 (La.App. 2 Cir.1942.). In the present case, defendants’ claim of error centers around the inclusion of the “Red Barn” property in the agreement. Because the trial court did not order specific performance with respect to this property and because, for reasons expressed below, we affirm that decision, exclusion of parol evidence with regard to this property was harmless. With respect to defendants’ claim of fraud, nothing in the record supports such a claim, and the trial court did not abuse its discretion in refusing to allow the introduction of parol evidence to show fraud.
EXCLUSION OF EVIDENCE UNDER THE DEAD MAN STATUTE
Defendant, J. Boring Montgomery, had filed a reconventional demand against plaintiff, claiming damages for breach of fiduciary duty, breach of contract, and unjust enrichment. At trial, defendants attempted to elicit testimonial evidence with respect to these claims. The trial court, however, ruled that the evidence was inadmissible under the so-called “dead man” statute, LSA-R.S. 13:3721. The dead man statute bars the use of parol evidence to prove any debt or liability of a deceased person against a succession representative, heirs, or legatees when no suit has been brought to enforce it prior to his death, except in certain enumerated circumstances. In the present case, none of the exceptions apply, and the trial court correctly excluded the proffered testimony.
Defendants maintain that it was error for the trial court to dismiss the reconven-tional demand based on the dead man statute. A review of the proceedings, however, shows that the trial court did not dismiss the reconventional demand based on the dead man statute. Rather, the trial court excluded the proffered evidence based on the statute and, at the close of trial, dismissed the reconventional demand on a motion for directed verdict due to the lack of evidence supporting the demand.
FAILURE OF THE TRIAL COURT TO GIVE A LIMITING INSTRUCTION
As the basis of its appeal of the trial court’s refusal to grant specific performance with respect to the “Red Barn” property, plaintiff contends that the trial court erred in refusing to instruct the jury with regard to the limited admissibility of certain parol evidence. A party, however, may not assign as error the failure to give an instruction unless he objects to that failure before the jury retires to deliberate and, in objecting, specifically states the matter to which he objects and the grounds for it. LSA-C.C.P. art. 1793. In the present case, plaintiff failed to object at trial to the trial court’s instructions with regard to parol evidence. This objection comes too late.
EXECUTOR’S RIGHT TO DEMAND FULL PERFORMANCE
In their brief, defendants argue that, at most, plaintiff is entitled to receive only a 50% interest in the property which the jury found to be subject to specific performance. They maintain that any rights arising under the agreement were community property belonging to J.Y. Foreman and his wife, Patricia Hammill Foreman. As a result, defendants maintain that plaintiff, the executor of J.Y. Foreman’s estate, has a right only to enforce one-half of the agreement.
By its own terms, the agreement provides that it is between the Montgomer-ys and:
“J.Y. FOREMAN, married to and residing with Patricia Hammill, a resident of Lafayette Parish, Louisiana, whose permanent mailing address is Post Office Box 3024, Lafayette, Louisiana ...”
The agreement was signed by J.Y. Foreman without any indication he was signing in any other than his personal capacity. Defendants contend, and we are inclined to agree, that this results in a presumption that the rights arising out of the agree *1287 ment were community property and that, since this presumption was not rebutted at trial, Patricia Hammill Foreman has a one-half interest in the agreement. Nevertheless, even if, as defendants maintain, the executor and Patricia Hammill Foreman are joint obligees, this does not inevitably lead to the conclusion that the executor is not entitled to enforce the whole agreement.
The agreement did not give J.Y. Foreman any present interest in the property. Rather, it gave him a right in the nature of an option. The agreement itself evinces no intention that this right to demand the conveyance of the property from defendants be divisible, i.e., that plaintiff can call upon defendants to convey a one-half undivided interest in the property. Former LSA-C.C. art. 2109 (1870) which was in force at the time the agreement was entered into, provides that an obligation is indivisible if “the light, in which it is considered in the obligation, does not admit of its being partially executed.” Such is the case with defendants’ obligation to convey the property. It is indivisible. When one obligor owes an indivisible performance to distinct obligees, the obligees are solidary obligees. Nabors v. Producers’ Oil Co., 140 La. 985, 74 So. 527 (1917); LSA-C.C. art. 2113 (1870).[6]
It is the nature of solidary obligees that each such obligee may demand the whole performance. LSA-C.C. art. 2088 (1870). Plaintiff, the executor, then, had the right to demand full performance from defendants. Although Patricia Hammill Foreman may be a necessary party under LSA-C. C.P. art. 643 (since she appears to be a joint obligee), defendants have waived their right to object to the failure to join her as a party to the action because they failed to make any objection until after this appeal was taken. The failure to join a necessary party to an action may be pleaded only in a dilatory objection. LSA-C.C.P. art. 645.
DECREE
For the foregoing reasons, the judgment' of the trial court is affirmed. All costs are to be assessed against defendants.
AFFIRMED.

. Defendant, J. Boring Montgomery, died prior to the case going to trial, and J. Boring Montgomery, Jr., executor of the succession of J. Boring Montgomery, was substituted as defendant.

. Michael Montgomery was not originally included as a defendant. After Michael Montgomery intervened in the suit, plaintiff amended his petition to name Michael Montgomery as a party defendant.

.Plaintiff contends that defendants’ appeal was untimely. The record, however, shows that the filing, which was made by mail, arrived within the presumption of timeliness as established by this Court’s rule 2-13.

 The other parties to the agreement, Imogene McCallun Montgomery and Effie Montgomery, are not parties to this suit.

. The agreement was entered into before the 1984 revision of the law of obligations. The substance of C.C. art. 1956 (1870) was retained and expanded in new C.C. art. 2053 (1984). (See West’s Louisiana Statutes Annotated, 1986 Special Pamphlet, C.C. Articles 1756-2291, Comment (e) to Art. 2053.)

. LSA-C.C. art. 1818(1984) provides that:
"An indivisible obligation with more than one obligor or obligee is subject to the rules governing solidary obligations.” Comment A to this article states that article 1818 reproduces the substance of C.C. art. 2113 (1870) and that it does not change the law.