364 So.2d 1313 (1978)
Debra WILSON, Plaintiff-Appellee,
v.
STATE of Louisiana, THROUGH the DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 6693.
Court of Appeal of Louisiana, Third Circuit.
November 1, 1978.
Writ Refused January 12, 1979.
*1314 Fruge & Vidrine, Jack C. Fruge, Sr., Ville Platte, for defendant-appellant.
Jackson, Smith & Ford, S. Chris Smith, III, Leesville, for plaintiff-appellee.
Rodney W. Schamerhorn, Leesville, for defendant-appellee.
Before CULPEPPER, GUIDRY and FORET, JJ.
FORET, Judge.
Debra K. Wilson instituted this suit for personal injuries received when the pickup *1315 truck in which she was a passenger collided with a large tree lying across Louisiana Highway 28. She alleges that the accident occurred solely as a result of the negligence of the defendant, Department of Highways, in not removing or otherwise attending to this tree which, prior to falling across the highway, was leaning out over it in such a manner as to create a clear danger of its falling and thus obstructing the highway. The Department of Highways answered by way of general denial and third partied Rodney Schamerhorn, the driver of the pickup truck.
The trial court found that the accident was due solely to the negligence of the Department of Highways and awarded Debra Wilson $9,617.70 plus legal interest. The third party demand was dismissed.
The Department of Highways appeals this judgment maintaining that:
(1) it was not negligent in its conduct,
(2) that the third party defendant, the driver of the pickup truck, was negligent, and
(3) that plaintiff lacked the procedural capacity to sue for recovery of medical expenses.
Plaintiff answers the appeal urging an increase in the amount of recovery.
Rodney Schamerhorn picked up his sister, the plaintiff, Debra Wilson, at approximately 3:15 A.M. in his grandfather's 1972 Ford pickup truck. Driving on Louisiana Highway 28 near the community of Hicks, the truck collided with a large pine tree which was lying completely across the highway. For several days prior to the accident there had been a considerable amount of bad weather in the area; on the night of the accident, it had been raining and the weather conditions were generally unfavorable.
One or two days prior to the accident, a Department of Highways crew had been sent out along the highway to clean up the trees and debris blown down by the wind and rain and to seek out any trees which might present a potential hazard and to remove those which might fall onto the highway. Testimony of a number of Department of Highways employees shows that a crew inspected this very tree one or two days prior to the accident; the crew discussed cutting down this tree, however the foreman of the crew apparently decided not to remove it. The testimony of a Mr. Douglas Gordy, an employee of the Department of Highways was as follows:
"Q. Mr. Gordy, that tree was leaning toward the road, is that right?
A. That's right.
Q. And it was about five feet from the fence?
A. Yes sir.
Q. Was it leaning far enough that it was leaning over the fence?
A. Yes sir, it was.
Q. Okay sir. So it actually leaned over and extended out over the highway right-of-way, is that right?
A. Uh, . . .
Q. . . . part of it?
A. Yes sir."
(Tr., pg. 164)
Mr. Elwood Busby, also an employee of the Department of Highways, confirmed Mr. Gordy's testimony as follows:
"Q. Had you been there to look at this tree before the accident happened?
A. Yes sir. We went out there and we looked at it and I told them and I said, I'll skin up that tree and tie a cable on it."
However, the foreman, Louie Dowden, apparently decided not to cut the tree down at that time.
The Department of Highways is not an insurer nor responsible for every accident that occurs on the State highways. However, it is the duty of the Department of Highways to maintain the roads so that they will be reasonably safe for a prudent motorist. The Department of Highways is only liable for accidents occurring on the highways if the unsafe condition was (1) obviously dangerous to a reasonably careful and prudent motorist and (2) the Department had notice (actual or constructive) of the defect and had an opportunity to remedy *1316 it. United States Fidelity & Guaranty Co. v. State, Department of Highways, 339 So.2d 780 (La.1976); Laborde v. La., Dept. of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974), writ refused; Doucet v. State, Dept. of Highways, 309 So.2d 382 (La.App. 3 Cir. 1975), writ refused; Wilkinson v. American Insurance Co. of Newark, New Jersey, 311 So.2d 584 (La.App. 3 Cir. 1975); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir. 1973); Barnes v. Liberty Mutual Insurance Co., 350 So.2d 288 (La.App. 3 Cir. 1977), writ refused.
It is obvious that a highway with a large pine tree completely across it is not "reasonably safe" for the motoring public. As shown by the facts of this accident, the pine tree was a sufficiently dangerous defect so as to cause the accident, and the Department had notice, according to the testimony of its own employees, of the potential danger posed by this large pine tree leaning over the highway right-of-way. Its crew, a day or so before the accident, was in the area cutting down other trees. The Department had reasonable time to remedy the situation by cutting down or otherwise restraining this tree.
In aid of its defense, the Department of Highways notes the recent Second Circuit case of Adams v. La., Department of Highways, 357 So.2d 1239 (La.App. 2 Cir. 1978) wherein the Department was held liable in damages to a landowner for cutting down a "landmark" pecan tree located on private property.
"A public body may not destroy private property overhanging a public right of way without observing legal process unless the property constitutes a public nuisance or poses imminent danger to users of the right of way. Oglesby v. Town of Winnfield, 27 So.2d 137 (La.App. 2d Cir. 1946); Tissot v. Great Southern Telephone & Telegraph Co., 39 La.Ann. 996, 3 So. 261 (1887). See also annotation at 64 A.L.R.2d 870. There is no evidence that The Statue-of-Liberty tree was a public nuisance or that it posed imminent danger to the highway users. (Emphasis provided.)
The testimony in the present case tends to show that the tree in question was in fact located on private property behind a fence; however, it is clear that the tree did pose an imminent danger to users of the highway as evidenced by the fact that it fell within days of being inspected by the Department of Highways. The Department of Highways clearly owed a duty to the motoring public to remove or restrain this tree.
We quote from 14 A.L.R.2d 203:
"While there is some authority not in full accord, the majority of the cases considering the question have taken the view that a state or municipality cannot avoid liability for damages caused by the fall of a tree, or limb of a tree, by showing that it stood on private property abutting the highway, rather than on the highway itself, where the tree or limb fell into the highway, and its condition had been such as to put the authorities on notice that it endangered those passing along the highway."
The employees of the Highway Department made no attempt to contact Mr. Jeter, the owner of the land on which the tree was located, to tell him that the tree posed a definite danger of falling across the highway and to ask his permission to remove the tree. Had the Department done so, and had been refused permission by Mr. Jeter, their position in this matter would be somewhat more tenable. In our view, their failure to even seek permission from Mr. Jeter to remove the tree weakens the State's position considerably.
In our opinion, the duty of the Department of Highways to maintain its highways in a reasonably safe condition for the safety of the traveling public is so great that where a situation of imminent danger is posed to the users of the highway because of a tree or other hazardous instrumentality situated on private property along the highway right-of-way, the Department cannot sit back and ignore the dangers posed because the danger-causing object is situated on private property. At worst, in this case, *1317 had the State cut the tree down without the landowner's permission, it could have subjected itself to a matter of a few hundred dollars in damages, such as occurred in the case of Adams v. State, supra. On the other side of the coin, to save a possible few hundred dollars in damages, the Department having actual knowledge of the danger posed by the tree, sitting back and doing nothing, exposing unsuspecting members of the traveling public to great bodily injury or death, seems to us to be an anomalous situation, which we cannot sanction.
As to the Department's third party claim against the driver of the pickup truck, Rodney Schamerhorn, we agree with the conclusion of the trial court in finding no negligence on his part. Testimony by both Schamerhorn and the plaintiff was to the effect that he was driving at a reasonable rate of speed under the conditions (40 to 50 miles per hour) with his headlights on low beam as this was more effective under the rainy and hazy conditions then existing. When confronted with this unexpected obstacle across his path, a collision was unavoidable.

QUANTUM
Plaintiff has answered the appeal seeking an increase in quantum from $9,617.70 to $15,000. The record reveals that the plaintiff's injuries included a cervical sprain, upper or mid-back strain or sprain, and lumbar sprain or strain, together with worry and anxiety over the possible effects of the accident on her pregnancy and unborn child.
We find no manifest error in the judgment of the trial court, except as held hereinbelow.
Defendant, Department of Highways, alleges that plaintiff, Debra K. Wilson, is not the proper party to sue for recovery of medical expenses incurred as a result of this accident. At the time of this accident, Debra Wilson was married to and living with her husband, Russell Wilson. The medical expenses incurred were billed to him. However, at the time of this trial, she was legally divorced from him and remarried. Her petition alleges that she is a "femme sole" and her brief to this Court states that at the time of filing of this suit she was legally separated from her husband. This is contradicted by her own testimony at trial.
"Q. And at the time that you actually filed suit in this accident, were you living separate and apart from him?
A. No, I was living with him."
(Tr., pg. 168)
In any case, the obligation was incurred during the existence of the community between Debra and Russell Wilson. As such, it is a community debt and the husband, as the head and master of the community, is the proper party to sue to recover such expenses. There is no evidence of any separation agreement by which she agreed to be bound for these medical expenses; it is her right to reject all community assets and debts upon dissolution of the marriage. Counsel for defendant, Department of Highways, timely objected at trial to her procedural capacity to sue and recover for such expenses. This Court reverses the decision of the trial court and holds plaintiff, Debra Wilson, is not the proper party to sue to recover such expenses and that the timely objection of defendant, Department of Highways, should have been sustained. Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3 Cir. 1977), writ refused. In all other respects, the amount of damages awarded by the trial court is within the bounds of its much discretion.
Accordingly, the judgment of the trial court is amended to reduce the award by the amount of medical expenses awarded, $617.70, and as amended, affirmed.
Defendant-appellant, Department of Highways is to pay all costs of these proceedings, which can be taxed against the State under existing law.
AMENDED AND AFFIRMED.