HALLEN M. BABINEAUX, Judge Pro Tem.
This case involves an accident which occurred April 15, 1994, on Louisiana Highway 127 in LaSalle Parish. A dead tree located five feet from the right of way adjacent to the highway fell on a wrecker owned and driven by Wayne Grant. Mr. Grant and his wife sued the owners of the tree and the State of Louisiana, through the Department of Transportation (DOTD), for the damages sustained by them as a result of the accident. The owners of the tree settled with the plaintiffs prior to trial. On September 12 through September 15, 1995, the plaintiffs tried their claims against DOTD. At the completion of the trial, the jury returned a verdict in favor of plaintiffs on their claims against DOTD finding DOTD 100% liable for the fallen tree. ^Thereafter, DOTD filed a motion for judgment notwithstanding the verdict. After a hearing on the motion, the trial judge reduced the liability of DOTD from 100% to 80%. DOTD appealed.
SPECIFICATIONS OF ERROR
DOTD asserts four specifications of error:
1. The trial court erred when it only reduced the jury’s verdict of 100% DOTD fault to 80% fault; the evidence at trial established that DOTD did not breach its duty to provide a reasonably safe roadway for the motoring public, because the plaintiff failed to carry its burden of proving that DOTD had actual or constructive notice of the defective tree.
2. The trial court erred when it did not find the strictly liable landowners, Mrs. Holloway and Ms. Farrar, 100% at fault in being liable for the plaintiff/appellee’s damages.
3. The trial court erred when it allowed the plaintiffs counsel to argue to the jury that the strictly liable landowners were not responsible for the plaintiffs damages because they did not know the defective tree was on their property; pursuant to strict liability their knowledge of the defective tree was irrelevant.
4.The trial court erred when it did not provide the jury with a jury verdict form that would have allowed the jury to award damages to the plaintiff, if it found landowner liability, but not DOTD liability.
The damage awards by the jury have not been appealed.
STANDARD OF REVIEW
An appellate court may not set aside a trial court’s or jury’s findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880, 882 (La.1993), citing Rosell v. ESCO, 549 So.2d 840 (La.1989). The Supreme Court has established a two-tier test for reversal of a fact finder’s determinations: (1) [t]he appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must farther determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart, 617 So.2d at 882, citing Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
A reviewing court must do more than simply review the record for evidence which supports or controverts the trial court’s findings. It must review the record in its entirety to determine whether the trial court’s findings were clearly wrong or manifestly erroneous. Id. The task of the reviewing court is not to determine whether the conclusions of the trier of fact were right or wrong. The task is to determine whether the fact finder’s conclusions were reasonable. Disagreement with the findings of the trial court, alone, are not grounds for substituting its judgment for that of the trier of fact. Id.
LIABILITY OF DOTD
DOTD has a duty to keep highways and shoulders reasonably safe for nonnegli- *706 gent drivers, however, it is not the guarantor of the safety of travelers. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). This includes the duty to look for situations where a condition off of the right of way may endanger the safely of motorists. Wilson v. State, Through Dept. Of Highways, 364 So.2d 1313 (La.App. 3 Cir.1978), writ denied, 366 So.2d 563 (La.1979). In Wilson the Court outlined the duty of DOTD in such situations, stating:
[T]he duty of the Department of Highways to maintain its highways in a reasonably safe condition for the safety of the traveling public is so great that where a situation of imminent danger is posed to the users of the highway because of a tree or other hazardous instrumentality situated on private property along the highway right-of-way, the Department cannot sit back and ignore the dangers posed because the danger-causing object is situated on private property.
Id. at 1316.
^Liability based upon negligence is imputed to the State when it can be proven that DOTD was actually or constructively aware of a hazardous condition and failed to take corrective action within a reasonable time. Sinitiere, 391 So.2d 821.
NOTICE
In order for DOTD to be liable to plaintiffs, DOTD had to have actual or constructive notice of the condition of the tree that fell on Mr. Grant’s wrecker. Id. In Briggs v. Hartford, 517 So.2d 1173, 1176 (La.App. 3 Cir.), writ granted, 521 So.2d 1160; judgment modified, 532 So.2d 1154 (La.1988), this court stated: “One is presumed to have constructive knowledge of a defect or dangerous condition when it is shown it existed for such a long time that knowledge thereof can be presumed, or that it can be said one should have had knowledge of the condition.”
DOTD stipulated that the tree which fell and struck the wrecker Wayne Grant was driving had been dead for at least one year at the time of the accident. It is the opinion of Fred S. Jewell, who was qualified as an expert in forest pathology, that the tree had been dead for at least three years prior to the accident, maybe longer.
Mr. Jewell further testified that the first change in a dying tree occurs in the crown of the tree. There is change in the color of the crown, then the needles or leaves fall off of the tree, then the tree dies. The crown of the tree is the foliage of the tree and the limbs and branches to which the foliage is attached. In Jewell’s opinion it generally takes about six weeks for needles to fall off of a dying tree, however, it may take more time in the spring or less time in late summer or early fall. According to Jewell, there is a definite pattern of deterioration of a tree. Once the needles have fallen off, then small twigs and branches fall off. Next, there is progression to the loss of larger limbs.
IsMr. Jewell examined the dead tree ten days after the accident occurred. At that time there were no needles or small branches left on the tree. There were some larger branches, maybe two inches in diameter left on the tree. He estimated the height of the tree to be 96 feet to 100 feet tall.
He testified that the tree would have been visible coming from either the north or the south. In his opinion, the inspector for DOTD should have seen the dead tree. He agreed that the inspector may have had to look up to see signs that the tree was dead. He did not believe that the foliage of the other trees in the vicinity of the dead tree would have blocked it from view, because the foliage of the sweet gums in front of the dead tree was approximately 30 feet below it, and the other pine trees were parallel with it.
The testimony of James Tooke, who was qualified as an expert in land surveying, supported the testimony of Mr. Jewell. Mr. Tooke went to the accident site and plotted the trees in close proximity to the dead tree. In performing his survey Mr. Tooke was primarily concerned with the trees that were basically parallel to the highway right of way and in between the dead pine stump and the highway. To the north of the dead pine stump was another pine tree that was 22 inches in diameter and 102 feet tall; it was 25.5 feet from the dead pine stump. South of the dead pine stump was another pine tree, 26 inches in diameter and 100 feet tall; it was 34.5 feet from the stump. In between *707 the dead pine stump and the right of way were a 65 feet tall double sweet gum, a 73 feet tall sweet gum and one sweet gum that is just lower than the double sweet gum.
Mr. Warren Peters was qualified as an expert in the field of forestry and testified for DOTD. Mr. Peters did not-dispute the measurements of Mr. Tooke regarding the size and location of the trees described above. In his words the pine | ¡¡trees described above were “more or less in line parallel to the right — to the highway right of way.”
Mr. Peters testified that it is possible that the tree top of the dead pine tree was hidden from view when it was still standing and that it could have been difficult or maybe impossible to see the tree from very far away down the road. However, he agreed that the top of the dead pine tree would have been considerably above the sweet gums that were situated in front of it. Further, he believed that the two pine trees left standing were basically in the same line of sight, and parallel to the roadway as the one that fell.
On cross-examination Mr. Peters was asked “if its somebody’s job to find dead pine trees you would think they would know they would have to turn their head up?” He responded “I guess.”
Jerry Powe was the maintenance superintendent for DOTD at the time of the accident. He held this position eight or ten years before he retired from DOTD. He testified that he inspected for dead trees and leaning green trees. If he saw anything that may be hazardous for motorists, he would have it removed from the right of way. If a hazard was situated off of the right of way, he would have the owner remove it; if the owner did not remove it, DOTD would remove it.
Mr. Powe did not have any specialized training in how to inspect for dead trees, but he had been in the woods all his life. He had worked cutting logs and timber, and cruised timber before he went to work for the state.
As inspector, he performed his inspections by himself from his vehicle most of the time. Sometimes he stopped and pulled off on the shoulder of the road or drove along slowly. He traveled the highway where the accident happened ten times or more each month.
Mr. Powe did not see the dead pine tree before it fell. He testified he did not |7have any problems seeing the two pines trees that were situated north and south of the dead pine tree. When asked if there was any reason he could not have seen the dead pine tree that had been located between the northern pine tree and the southern pine tree, Mr. Powe answered that it was according to how it was situated between the trees. He did not testily that it was blocked from view by other trees.
When considering all of the evidence presented, this court can not say that the determination of the jury that DOTD knew or should have known of the dead pine tree was unreasonable. The jury certainly could have concluded that Jerry Powe should have seen the dead pine tree prior to it falling on Wayne Grant’s wrecker, considering the tree had been dead at least one year before the accident, which occurred in April. According to the testimony of Mr. Jewell, the needles on the tree would have dropped from the tree by the fall of 1994, the leaves on the sweet gums situated in front of the tree would also have dropped, leaving the tree visible. Testimony that the pine trees north and south of the tree may have blocked the view of the tree was equivocal. Mr. Peters testified it was possible the top of the tree was hidden from view when it was still standing. Mr. Powe denied having seen the tree, but did not testify that his view of the top of the tree was blocked.
We find that the jury’s conclusions as to the liability of DOTD were reasonable and must be affirmed.
ALLOCATION OF LIABILITY
DOTD asserts that the trial court’s reduction of liability from 100% to 80% was error because the landowner’s liability is 100% pursuant to La.Civ.Code art. 2317. Article 2317 provides: “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody. This howev *708 er, is to be understood with the following modifications.”
IgLiability under Article 2317 is strict. Loescher v. Parr, 324 So.2d 441 (La.1975). In Loescher the Court held that the owner of a diseased tree that falls and causes injury to another is strictly liable for the damage caused by the tree.
The plaintiffs stipulated with DOTD that the dead pine tree was situated on property owned by Camille W. Holloway and Cammie Farrar, the tree had been dead for at least one year and the tree fell on the wrecker driven by Lee Wayne Grant. This stipulation established the landowners’ strict liability for the damage occasioned by the fall of the dead tree.
Comparative negligence is applicable to eases involving strict liability and negligence. Landry v. State of Louisiana, 496 So.2d 1284 (La.1986). Therefore, DOTD’s argument that the landowner’s liability is 100% because they are strictly liable is erroneous.
The allocation of comparative fault is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Boddie v. State of Louisiana, 27,313 (La. 2 Cir. 9/27/95), 661 So.2d 617. In making an allocation of fault the trier of fact is to consider the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Summerall v. Ouachita Parish School Board, 27,643 (La.App. 2 Cir. 12/8/95), 665 So.2d 734.
In making an assessment of the nature of the conduct of each party the trier of fact may take into account various factors, like:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor whether superior or inferi- or, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967, 974 9(La.1985).
Our review of the record in this matter leads us to the conclusion that the trial court’s determination that the liability of DOTD is 80% and the liability of the landowners is 20% is manifestly erroneous. Accordingly, there must be a reallocation of fault between DOTD and the landowners.
The standard for reallocating fault was enunciated by the Supreme Court in Clement v. Frey, 95-1119, 95-1163, pp. 7-8 (La.1/16/96), 666 So.2d 607, 611 where the court held: “ [a]fter the court of appeal finds a ‘clearly wrong’ apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion.”
In considering the factors outlined in Watson, 469 So.2d 967, it is important that the landowners are strictly liable for the dead tree. They had an absolute duty to discover the risks presented by the tree. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). They were presumed to know the condition of the tree at all times. On the other hand, DOTD’s liability is in negligence for its failure to discover the condition of the tree and the danger it posed to motorists. Therefore, we conclude that DOTD’s liability cannot be any greater than the landowner’s liability, and the highest percentage of liability that can be assessed to DOTD is 50%. Accordingly, we reduce the liability of DOTD from 80% to 50%.
CLOSING ARGUMENTS
The next specification of error asserted by DOTD is that the trial court improperly allowed the plaintiffs attorney to argue to the jury that the landowners hoshould not be apportioned fault because they did not know the tree was on their property.
Arguments of counsel are not evidence, and it is within the discretion of the trial court to determine whether argument by counsel is within property bounds. A trial court’s ruling on an argument by counsel to the jury will not be reversed, unless it *709 is determined that his ruling was “an abuse of his much discretion.” Guidry v. Boston Old Colony Ins. Co., 540 So.2d 543, 546 (La.App. 3 Cir.1989), citing Temple v. Liberty Mut. Ins. Co., 330 So.2d 891 (La.1976); Benoit v. Fireman’s Fund Ins. Co., 361 So.2d 1332 (La.App. 3 Cir.1978). DOTD complains plaintiffs should not have been able to argue that the landowners were not at fault because the law provides the landowners are strictly liable for damage caused by the tree.
We agree that the argument was not a correct statement of the law. However, the trial court did properly instruct the jury on the liability of the landowner. Further, DOTD waived its objection after it was made, stating “Your honor, I have to object — if you’re going to give the instruction, it doesn’t matter.”
JURY VERDICT FORM
Last, DOTD argues the trial court committed error because the verdict form it provided to the jury allowed the jury to allocate fault to the landowners, but it did not allow the jury to allocate damages, unless fault was allocated to DOTD. We find no merit to this argument.
Article 1812 C of the Louisiana Code of Civil Procedure permits the trial court to submit written questions to the jury in personal injury and wrongful death cases to quantify the fault of non-parties. This article permits non-party fault to be quantified, but it does not require it, nor does it specify which non-parties should have their fault quantified by the jury. In Cavalier v. Cain’s Hydrostatic Testing, Inc., 94-1496 (La.6/30/95), 657 So.2d 975, the Supreme Court discussed this issue Inin depth. While the court held it necessary to quantify the fault of a settling tortfeasor, it did not mention whether a jury should be allowed to proceed to award damages when only one tortfeasor is before the court.
We agree with the trial court that it would be “a vain useless thing” to provide instructions to the jury as requested by DOTD. If the jury determined DOTD was not at fault there’s no need to allocate fault, nor is there need to assess damages. Having the jury award damages to the plaintiffs when the only party before it is determined not to be liable for damages would be more confusing to the jury than the method used by the trial court.
DISPOSITION
For the foregoing reasons, the judgment of the trial court is amended to reduce the liability of the State of Louisiana, through the Department of Transportation and Development, to 50% and to increase the liability of Camille W. Holloway and Cammie Far-rar to 50%. The judgment is affirmed in all other respects.
Costs of this appeal are assessed to the State of Louisiana, through the Department of Transportation and Development.
AFFIRMED AS AMENDED.