STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-417


GERALD W. GREER

VERSUS

STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT, ET AL.


************

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. 2002-291
HONORABLE PATRICIA C. COLE, DISTRICT COURT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.


**REVERSED IN PART; AFFIRMED IN PART;
AND AMENDED IN PART.**


A. Bruce Rozas
Rozas & Rozas
Post Office Drawer 280
Mamou, Louisiana 70554-0280
(337) 468-5271
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    Gerald W. Greer

Kenneth Pitre
Pitre Law Office
P.O. Drawer 1260
Eunice, Louisiana 70535-1260
(337) 457-9048
**COUNSEL FOR PLAINTIFF/APPELLEE:**
Gerald W. Greer

Sylvia M. Fordice
Assistant Attorney General
Louisiana Department of Justice
Division of Risk Litigation
556 Jefferson Street, 4th Floor
Lafayette, Louisiana 70501
(337) 262-1700
**COUNSEL FOR DEFENDANT/APPELLANT:**
State of Louisiana, through the Department of Transportation
and Development

**GENOVESE, Judge.**

Following a single vehicle motorcycle accident, Plaintiff, Gerald W. Greer (Greer), filed suit against the State of Louisiana, through the Department of Transportation and Development (DOTD), a private landowner, James Wade Willis (Willis), Willis' homeowner's insurer, Patterson Insurance Company (Patterson), and following Patterson being placed into receivership, Louisiana Insurance Guaranty Association (LIGA). A jury allocated fault between Greer (forty percent), DOTD (forty percent), and Willis (twenty percent), and awarded damages totaling $40,200.00. Greer filed a motion for additur, which was denied by the trial court, and a motion for judgment notwithstanding the verdict (JNOV), which was granted in part, and denied in part. DOTD appealed, and Greer answered the appeal. For the following reasons, we reverse in part, affirm in part, and amend in part.

## FACTS

On June 11, 2001, at approximately 2:00 a.m., Greer was riding his motorcycle northbound on Louisiana Highway 1153, in Allen Parish, Louisiana, when he encountered a tree which had fallen across the roadway. Greer collided with the tree, was thrown from his motorcycle, and sustained personal injury.

Greer filed suit against DOTD, Willis, Patterson, and subsequently, LIGA. The matter was tried before a jury which allocated forty percent fault to Greer, forty percent fault to DOTD, and twenty percent fault to Willis. The jury also awarded damages as follows:

| | | |
|---|---|---|
| A. Property Damage | $ | 700.00 |
| B. Past Pain and Suffering | $ | 2,000.00 |
| C. Future Pain and Suffering | $ | 1,000.00 |
| D. Past Medical Expenses | $ | 11,500.00 |
| E. Future Medical Expenses | $ | 25,000.00 |
| F. Past Lost Wages | $ | 0.00 |

1

| | | | |
|---|---|---|---|
| G. Loss of Earning Capacity | $ | 0.00 | |
| H. Loss of Enjoyment of Life | $ | 0.00 | |

On September 26, 2005, Greer filed a motion for additur and a motion for JNOV. The trial court: (1) denied Greer's motion for additur; (2) denied Greer's motion for JNOV relative to liability; and (3) granted Greer's motion for JNOV, in part, relative to damages and increased the jury award as follows:

| | JURY AWARD | JNOV |
|---|---|---|
| A. Property Damage | $ 700.00 | $ 3,500.00 |
| B. Past Pain and Suffering | $ 2,000.00 | $ 50,000.00 |
| C. Future Pain and Suffering | $ 1,000.00 | $ 25,000.00 |
| D. Past Medical Expenses | $ 11,500.00 | $ 11,558.07 |
| E. Past Lost Wages | $ 0.00 | $ 10,500.00 |
| F. Loss of Earning Capacity | $ 0.00 | $ 7,000.00 |
| G. Loss of Enjoyment of Life | $ 0.00 | $ 5,000.00 |

The trial court also assessed court costs one-half to DOTD and one-half to Greer. The JNOV was signed by the trial court November 17, 2005. It is from this judgment that DOTD has appealed, and Greer has answered the appeal.

## ISSUES

The issues presented for our review include liability, allocation of fault, damages, and the assessment of court costs.

## LAW AND ARGUMENT

**LIABILITY OF DOTD**

An appellate court may not set aside a jury's finding of fact absent manifest error or unless it is clearly wrong. *Sistler v. Liberty Mut. Ins. Co*., 558 So.2d 1106 (La.1990). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding; and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly

erroneous. *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

In order to establish liability on the part of DOTD, Greer had the burden of proving that: (1) the tree was in the care, custody, and control of DOTD; (2) the tree was defective, i.e., it posed an unreasonable risk of harm; (3) DOTD had actual or constructive notice of the defect; (4) DOTD had an opportunity to remedy the defect and failed to do so; and (5) Greer was damaged as a result of the defect. *Vallien v. State, Dep't Transp. & Dev.*, 01-566 (La.App. 3 Cir. 3/27/02), 812 So.2d 894, *writs denied*, 02-1184, 02-1198 (La. 6/14/02), 818 So.2d 785 (quoting *Cormier v. Comeaux*, 98-2378 (La. 7/7/99), 748 So.2d 1123; *Netecke v. State, Dep't Transp. & Dev.*, 98-1182, 98-1197 (La. 10/19/99), 747 So.2d 489).

DOTD asserts on appeal that Greer failed in meeting his burden of proof on the first three enumerated elements of liability. Thus, our initial inquiry is whether the tree was in the care, custody and control, of DOTD. We conclude that it was.

Much effort was undertaken by the parties to establish whether the tree which fell was located totally on DOTD's right of way, totally on Willis' property, or partially on DOTD's right of way and partially on Willis' property. However, this factual finding is not determinative of the duty owed by DOTD.

With respect to DOTD's duty, the trial court gave the following instruction to the jury without objection:

> Although the [DOTD] is not the guarantor of the safety of travelers, it does owe a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Furthermore, it has a duty to remove a tree from property adjacent to its right-of way when it has actual or constructive knowledge the tree is in a condition where it may fall upon the road and create imminent danger for the users of the road. The [DOTD] also has a duty to provide adequate warning of such perilous condition.

3

The duty of the [DOTD] is to observe trees that [are] dead or leaning or otherwise appear defective by general observation and remove them within a reasonable time. This applies to trees on property adjacent to the [DOTD]'s right-of-way.

This instruction is an accurate statement of the law. The duty of DOTD "includes the duty to look for situations where a condition off of the right of way may endanger the safety of motorists." *Grant v. Allstate Ins. Co.*, 96-1028, p. 3 (La. App. 3 Cir. 6/4/97), 696 So.2d 275, 277, *writs denied*, 97-1717, 97-1579 (La. 10/10/97), 703 So.2d 606 (citing *Wilson v. State, Through Dept. of Highways*, 364 So.2d 1313 (La.App. 3 Cir.1978), *writ denied*, 366 So.2d 563 (La.1979). Quoting from *Wilson*, this court expounded on the duty of DOTD as follows:

> [T]he duty of the [DOTD] to maintain its highways in a reasonably safe condition for the safety of the traveling public is so great that where a situation of imminent danger is posed to the users of the highway because of a tree or other hazardous instrumentality situated on private property along the highway right-of-way, the Department cannot sit back and ignore the dangers posed because the danger-causing object is situated on private property.
> *Id*. at 1316.

*Grant*, 696 So.2d at 277-78.

We also recognize that the duty of DOTD is an affirmative duty to inspect. As explained by the supreme court, when addressing the risk associated with a tree falling onto a highway, "the [DOTD]'s duty with respect to the limbs was to inspect them, as they inspect roadside trees, by looking for dead limbs or those which manifest some other indication that they are likely to fall into the roadway and to remove such limbs within a reasonable time." *Thompson v. State*, 97-0293, p. 4 (La. 10/31/97), 701 So.2d 952, 956.

In the instant matter, the experts testifying at trial about the location of the fallen tree differed as to whether it was located on DOTD's right-of-way, on Willis' property, or whether the tree and its "sister tree" straddled same. However, despite

4

the significant amount of time and effort which both parties devoted to establishing the exact location of the fallen tree, even if it were the factual finding of the jury that the tree was located solely on Willis' property, such a finding would not exonerate DOTD from all liability. Therefore, the issues remaining are whether the tree was defective, and whether DOTD had actual or constructive notice of the defect.

The fact that the fallen tree was defective due to its rotten condition is not seriously disputed by the parties. DOTD, in brief, asserts that "[w]hile the tree in this case certainly presented a risk of harm, the court should find the risk of harm was not unreasonable." We disagree. All experts agreed that the tree was rotten and that it had been in that condition for a significant amount of time. Therefore, we find that the record contains a reasonable factual basis for the finding that the tree was defective due to its rotten condition and the immediate danger which it presented to the motoring public.

The remaining question, therefore, is that of notice. DOTD asserts that it did not have actual or constructive notice for the imposition of liability. To the contrary, we find that the record contains ample evidence to establish the requisite notice and knowledge on the part of DOTD.

The fallen tree struck by Greer was located along Louisiana Highway 1153, just north of Oakdale, Louisiana, in Allen Parish. The fallen tree was one of "twin trees" which broke apart from its "sister tree" and fell across the roadway, blocking the entire roadway. Several photographs of the tree and its location were introduced into evidence. These photographs clearly depict a large hole in the trunk of the sister tree, as well as a hole between the sister tree and the fallen tree.

The record is replete with evidence establishing the degree of deterioration of the fallen tree. Steve Ardoin, an expert arborist, testified that when he visited the

5

location of the accident, he saw the sister tree with a large hole in the bottom of it. He described the tree as having a large cavity and being all decayed inside. In his opinion, the tree had been in that condition for three to five years. Mr. Ardoin also testified that the remnants from the fallen tree indicated to him that the fork was totally dead. He stated that the tree had been in danger of falling for five years or more. In his estimation, ninety percent of it, or better, was rotten. Mr. Ardoin testified that the dead condition of the fork, the hole in the sister tree, and the cavity between the two, were all visible and "would have been exposed." He testified that DOTD should have been able to see the condition of the tree from the highway.

Warren Peters, a consultant forester who performed an inspection of the accident scene, was also called to testify. Notably, at the time of his inspection, the sister tree had been cut down and all that remained was its stump. Therefore, unlike Mr. Ardoin, he was not able to see the sister tree as it was before it was removed. Mr. Peters agreed with Mr. Ardoin that the tree was dead and that it had been dead for a long time. Although Mr. Peters testified that he was uncertain whether the condition would have been visible to an individual driving on the highway, he did agree that the rotten limb and the hole in the sister tree would have caused him to stop and examine it. Mr. Peters admitted that this condition would cause concern to him that the tree was defective and would indicate the need for inspection.

Wilbert LeBlue is the parish superintendent for Allen Parish. He testified that, as parish superintendent, he inspects not only the state highways in the parish, but that he looks for anything which may be of danger to the motoring public. In conducting his inspection, he looks for leaning trees, trees that are dying, and trees that might fall onto the roadway. Mr. LeBleu's job requires that he drive the highways in the parish at least twice a month to inspect their condition. Mr. LeBleu

6

testified that he did not observe a dead or leaning tree, or any other indication that the tree was in danger of falling. However, this witness did testify about the continuous work done over the years in and around this location. He explained the documentary evidence which showed that other state employees were on this roadway with work crews cleaning ditches, removing trees, and even hand spraying herbicide at the exact location where the tree fell. Moreover, Mr. LeBleu testified that logs, which are maintained by DOTD, document that approximately seventeen days *before* Greer's accident, hand spraying of herbicide was performed by DOTD at the location of the fallen tree.

Dan Daniels, a herbicide development operator with DOTD, was identified as the employee who had conducted the herbicide spraying. Mr. Daniels testified that he was physically at the location where the tree later fell, and that he was applying herbicide by hand on May 24, 2001, approximately seventeen days before Greer's accident on June 11, 2001.

When considering all of the evidence presented, this court cannot say that the jury's determination that DOTD knew or should have known of the rotten condition of the tree was unreasonable. Rather, we find that the record amply provides a reasonable factual basis for the jury's determination that DOTD had actual or constructive notice of the defective condition of the fallen tree, and that despite the opportunity to do so, it failed to remedy the situation. For the foregoing reasons, we agree with the jury's finding of liability on the part of DOTD.

**LIABILITY OF LANDOWNER**

Implicit in the jury's allocation of twenty percent fault to Willis is an underlying determination that he had "custody" of the defective tree. As set forth above, the expert testimony on the exact location of the tree was inconclusive;

7

however, said testimony did place the fallen tree at, on, or very near the state right of way for Louisiana Highway 1153. However, we pretermit further discussion of the issue of custody since we find that the record is void of any evidence of notice to or by Willis of the defective condition of the fallen tree.

Willis was deceased at the time of trial. In lieu of his live testimony, his deposition was read to the jury. Willis testified that he owned approximately thirty-three acres along Louisiana Highway 1153, where he resided for most of his life. He was familiar with the particular tree that fell. While farming his property, Willis and his farm workers often parked in the shade under this particular tree. However, Willis never noticed a problem with the tree before Greer's accident. To his knowledge, it was healthy and in good condition. Therefore, even if the tree in question was located solely on Willis' property, it was not proven that Willis had actual or constructive notice of the rotten tree sufficient for the imposition of liability.

Additionally, we are mindful that Willis, as a landowner, did not have a duty to inspect the trees. Rather, his duty was merely a duty to act as a reasonable person would act. The condition of the tree in question was arguably obscured, at least partially, by vegetation. This resulted in a condition where Willis, through the exercise of reasonable care, would not necessarily be put on notice of the defective nature of the tree. Notably, unlike DOTD, Willis did not have an affirmative duty to inspect.

As stated previously, there was insufficient proof establishing that the tree was even situated on Willis' property to even trigger liability on his part. For the foregoing reasons, we find the jury's determination of liability on the part of the landowner, Willis, to be manifestly erroneous.

8

**ALLOCATION OF FAULT**

Both parties have appealed the allocation of fault. DOTD appeals the allocation of forty percent fault which was assigned to it by the jury.[1] In his answer to appeal, Greer contends that neither he nor the landowner are at fault and that DOTD is one hundred percent at fault.

**Standard of Review**

Having reversed the trial court's imposition of liability on the part of Willis, we must reapportion fault. Consequently, our apportionment of fault between Greer and DOTD is determined by conducting a *de novo* review. *Turner v. D'Amico*, 97-214 (La. 3/21/97), 691 So.2d 70 (citing *Boudreaux v. Farmer*, 604 So.2d 641 (La.App. 1 Cir.), *writs denied*, 605 So.2d 1373, 1374 (La.1992)).

**Reallocation of Fault**

In assigning percentages of fault, we are to consider both the nature of each party's conduct and the extent of the relation between that conduct and the damages suffered. *Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967 (La.1985). In conducting a de novo review of the evidence, we will first address the amount of fault which we find is attributable to Greer.

It is noted that the record of these proceedings contains correspondence dated June 19, 2001, from Dr. Gerald W. Mouton (Dr. Mouton) to Greer's former attorney. Therein, Dr. Mouton documents that Greer "reported that he was the single driver of a motor cycle [sic] traveling approximately *55 to 60 miles per hour* when he ran into a tree that was laying across the road." (Emphasis added.) It is undisputed that the speed limit on highway 1153, where this accident occurred, was fifty miles per hour.

---

[1]DOTD asserts on appeal that "[t]he court's allocation of fault to the DOTD is contrary to the law and to the evidence;" However, its brief addresses the issues of custody, duty, and notice. We note that these issues are determinative of liability, not of an allocation of fault.

Therefore, we find that there is evidence in the record that Greer was exceeding the speed limit. Consequently, after conducting a *de novo* review, we agree with the jury's finding of forty percent fault on the part of Greer for the subject accident.

Having previously determined that Willis is not liable, we hereby assign the remaining percentage of fault to DOTD. Accordingly, we reallocate fault in the amount of sixty percent to DOTD and maintain Greer's fault at forty percent.

**DAMAGES**

Following the jury's verdict, Greer filed a motion for additur and motion for JNOV. On the elements of damages, the trial court granted the JNOV and increased each element of the damage award, with the exception of the award for future medical expenses. Greer contends on appeal that the increase in these awards was insufficient. DOTD asserts on appeal that the increase by the trial court in the damage awards for past and future pain and suffering and the award for past lost wages was in error. For the following reasons, we affirm in part, and amend in part.

**Standard of Review**

The standard governing our review of the trial court's grant of Greer's motion for JNOV on the issue of damages was set forth by the supreme court as follows:

> The use of JNOV is provided for by La.[Code Civ.P.] art. 1811. A JNOV may be granted on the issue of liability or on the issue of damages or on both issues. La.[Code Civ.P.] art. 1811(F). Article 1811 does not specify the grounds upon which the district court may grant a JNOV; however this court has set forth the criteria to be used in determining when a JNOV is proper as follows:
>
>> [A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion

10

which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

*Joseph v. Broussard Rice Mill, Inc.*, 00-0628, pp. 4-5 (La. 10/30/00), 772 So.2d 94, 99 (internal citations omitted). See also *VaSalle v. Wal-Mart Stores, Inc.*, 01-0462, p. 11 (La. 11/28/01), 801 So.2d 331, 338-39. The rigorous standard of JNOV is based upon the principle that "when there is a jury, the jury is the trier of fact." *Joseph*, 00-0628 at p. 5, 772 So.2d at 99 (quoting *Scott v. Hospital Serv. Dist. No. 1*, 496 So.2d 270, 273 (La.1986)).

In reviewing a JNOV, an appellate court must first determine whether the district judge erred in granting the JNOV by using the above-mentioned criteria in the same way as the district judge in deciding whether to grant the motion. *VaSalle*, 01-0462 at pp. 11-12, 801 So.2d at 339. Thus, the appellate court must determine whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Id.* at p. 12, 801 So.2d at 339 (quoting *Joseph*, 00-0628 at p. 5, 772 So.2d at 99). If the appellate court determines that reasonable persons might reach a different conclusion, then the district judge erred in granting the motion and the jury verdict should be reinstated. *Id.*

*Trunk v. Med. Ctr. of La. at New Orleans*, 04-181, pp. 4-5 (La. 10/19/04), 885 So.2d 534, 537; *Duchamp v. State Farm Mut. Auto Ins. Co.* 05-339 (La.App. 3 Cir. 11/2/05), 916 So.2d 498, *writ denied*, 05-2505 (La. 3/31/06), 925 So.2d 1260. "Once a trial court has granted a JNOV on the issue of damages, and has conducted its own independent assessment of the damages as trier of fact, that decision becomes the judgment of the court and it is reviewed on appeal for an abuse of discretion under the standard set forth in *Coco v. Winston* [*Indus., Inc.*, 341 So.2d 332 (La.1976)]." *Love v. Lewis*, 00-6, p. 7 (La.App. 3 Cir. 10/11/00), 771 So.2d 220, 224, *writ denied*, 00-3506 (La. 2/16/01), 786 So.2d 102; *Joseph v. Broussard Rice Mill, Inc.*, 00-628 (La. 10/30/00), 772 So.2d 94.

**Past Lost Wages**

DOTD contends that the jury properly failed to award Greer any damages for past lost wages and that the award should not have been subject to an upward adjustment to $10,500.00. We disagree. After reviewing the record in this case, we do not find that reasonable minds could differ on Greer's entitlement to damages for past lost wages. We, therefore, conclude that the trial court did not err in granting Greer's motion for JNOV on this element of damages.

Greer was out of work for three months following the accident. It was proven that his average monthly wage was approximately $3,500.00. Thus, having reviewed the evidence introduced at trial on the wages which were lost by Greer as a result of the subject accident, we find no abuse of the trial court's discretion in the award of $10,500.00 in past lost wages.

**Future Lost Wages and Loss of Earning Capacity**

The jury also did not award Greer any damages for loss of earning capacity. The trial court increased the award to $7,000.00. DOTD contends that the jury properly failed to award Greer damages for future loss of earning capacity and that the award should not have been subject to an upward adjustment by the trial court. We find that the trial court did not err in granting the JNOV on this element of damages as reasonable minds could not differ on Greer's entitlement to same.

The record showed that following the recommended shoulder surgery, he would not be employable for eight weeks. Given his average monthly earnings of $3,500.00, we find no abuse in this element of damages of the trial court's award.

**Past and Future Pain and Suffering**

The jury's award of $2,000.00 for past pain and suffering was increased by the trial court to $50,000.00. The trial court also increased the jury's award for future

12

pain and suffering from $1,000.00 to $25,000.00. DOTD asserts that these awards by the jury were adequate and should not have been increased by the trial court. On the other hand, Greer contends on appeal that these awards are still woefully inadequate. We agree with the trial court that the jury's awards for past and future pain and suffering were unreasonable. We also do not find that the trial court's awards of $50,000.00 and $25,000.00, respectively, to be an abuse of discretion.

Following the accident, Greer was transported to Oakdale Community Hospital where he was treated for a laceration above his right eye, contusions to his hip and low back, and abrasions to his arms, right elbow, and left thigh. He was subsequently brought to Shreveport Medical Center for a neurological and orthopedic evaluation. He was seen by Dr. Steven James Flood with complaints of pain in his right shoulder, low back, legs, heals and right knee. Greer also attended physical therapy. Dr. Flood testified that Greer had internal derangement with impingement in the shoulder, as well as internal derangement in the knee, and a tear of the lateral meniscus. Additionally, Greer testified that he continued to suffer with pain in his shoulder, hip, and knee as of the date of trial.

Dr. Flood was also of the opinion that Greer would have to undergo surgery on his shoulder in the future, at which time he would be out of work for a week to ten days. Dr. Flood estimated the recovery period for the shoulder surgery to be four to six months.

Considering Greer's injuries, past medical treatment, and future medicals, we do not find the awards for past and future pain and suffering to be abusively low or high. Given the trial court's vast discretion, we will not disturb these awards on appeal.

13

**Loss of Enjoyment of Life**

The jury did not award Greer any damages for loss of enjoyment of life. The trial court increased this award to $5,000.00. We do not find that reasonable minds could differ on Greer's entitlement to damages for loss of enjoyment of life and conclude that the trial court did not err in granting Greer's motion for JNOV on this element of damages. Greer testified that there were activities which he is unable to do because of his injuries, such as playing tennis and dancing. Considering the evidence in the record, we do not find this award to be an abuse of the trial court's discretion.

**Future Medical Expenses**

The jury awarded Greer $25,000.00 in future medical expenses. Greer argues on appeal that the trial court erred in failing to increase this award pursuant to his JNOV. We disagree.

When Dr. Flood was asked about the costs associated with the anticipated shoulder, he did not give an exact figure. He qualified what his surgical fee would be by stating it would depend upon what he found, and what he was required to do during the surgery, and then testified that his fee would range between $3,000.00 and $5,000.00. Dr. Flood also provided an amount for the associated surgical expenses of $25,000.00, which he stated was accurate withing a range of "a couple of thousand dollars more or less." Considering the estimation of future medicals provided by Dr. Flood, we cannot say that reasonable persons could not reach a different conclusion on the amount of future medical expenses which Greer would incur as a result of this accident. Therefore, we find that the trial court did not err in denying Greer's motion for JNOV relative to future medical expenses.

14

**Property Damages**

The jury awarded Greer $700.00 for the property damage sustained to his motorcycle. The trial court increased the jury award to $3,500.00. Greer asserts on appeal that he is entitled to a further increase in the property damage award. We agree.

Other than Greer's own testimony, the only witness who testified on the subject of property damage was Nina Doherty. Ms. Doherty is the owner of a Harley-Davidson store in Lake Charles, Louisiana, who has been selling motorcycles since 1971. She engages in the buying and selling of parts, and the repair of motorcycles. She is also knowledgeable about the retail prices for new and used motorcycles and their accessories.

Ms. Doherty saw Greer's Harley-Davidson motorcycle after the accident and prepared a written estimate. She testified that the motorcycle was "a total loss because there [was] nothing repairable on it." In her opinion, the value of this motorcycle was between $7,000.00 and $7,500.00, and that its accessories were valued at $2,000.00. Doherty also testified that the motorcycle had a salvage value of $100.00 to $150.00. This evidence was uncontradicted. Based on the foregoing, we find that $3,500.00 for property damage to be abusively low and the amount reasonably within the discretion of the trial court to be $7,000.00. Accordingly, we amend the award for property damage by increasing said award from $3,500.00 to $7,000.00.

**COURT COSTS**

Greer also assigns as error his assessment of one-half of the costs of the trial court. While we do not find that the assessment of court costs was an abuse of the trial court's discretion considering the judgment rendered therein, we find that

15

assessment to be inequitable given the reallocation of fault set forth above.

Louisiana Code of Civil Procedure Article 2164 provides the authority for this court to "render any judgment which is just, legal, and proper upon the record on appeal." Additionally, this article allows us to tax the costs of the trial court against any party to the suit, as we consider equitable. Pursuant to the authority granted by this article, we reverse the trial court's assessment of costs of court. In accordance with our reallocation of fault, we cast DOTD with sixty percent of the costs of the trial court, and Greer with forty percent of same.

## DECREE

For the foregoing reasons, we reverse the trial court's allocation of fault between the parties, and cast the State of Louisiana, through the Department of Transportation and Development, with sixty percent fault, and Gerald W. Greer with forty percent fault for the subject accident. We amend the property damage award to $7,000.00. Further, we reverse the trial court's assessment of costs of court, and cast Greer with forty percent of the costs of court, and the State of Louisiana, through the Department of Transportation and Development, with sixty percent of the costs of court in accordance with La.R.S. 13:5112, said sixty percent amounting to $ 4,955.33. In all other respects, the JNOV is affirmed.

Costs of this appeal are likewise assessed forty percent to Greer and sixty percent to the State of Louisiana, through the Department of Transportation and Development, in accordance with La.R.S. 13:5112, said appellate costs amounting to $1,561.92.

**REVERSED IN PART; AFFIRMED IN PART; AND AMENDED IN PART.**

16