# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 13-88

ROLAND LEE LEWIS

VERSUS

PROLINE SYSTEMS, INC., ET AL.

**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## THIRTY-FIRST JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON DAVIS, DOCKET NO. C-392-08
## HONORABLE STEVEN GUNNELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JAMES T. GENOVESE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and James T. Genovese, Judges.

**AFFIRMED.**

R. Brent Cueria
Cueria Law Firm, LLC
700 Camp Street, Suite 316
New Orleans, Louisiana 70130
(504) 525-5211
COUNSEL FOR PLAINTIFF/APPELLANT:
    Roland Lee Lewis


Kraig Thomas Strenge
515 West University Avenue
Post Office Drawer 52292
Lafayette, Louisiana 70502-2292
(337) 261-9722
COUNSEL FOR DEFENDANTS/APPELLEES:
    Guy J. Waguespack, Proline Systems, Inc.,
    and Lafayette Insurance Company

**GENOVESE, Judge.**

In this personal injury case, Plaintiff, Roland Lee Lewis, appeals the jury verdict in favor of Defendants, Guy J. Waguespack, Proline Systems, Inc. (Proline), and Lafayette Insurance Company (Lafayette Insurance), finding that Mr. Waguespack's negligence was not the proximate cause of Mr. Lewis' injuries. Mr. Lewis also appeals the denial of his motion for judgment notwithstanding the verdict (JNOV). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a suit for personal injuries allegedly sustained by Mr. Lewis in a three-vehicle accident on the morning of April 28, 2007, on Interstate 10 at the U.S. Highway 165 overpass in Jefferson Davis Parish, Louisiana. Traffic that morning was slow-moving due to the left lane of travel being closed for road construction.

The three vehicles were westbound in the right lane of travel. The lead vehicle was driven by Plaintiff, Mr. Lewis, the second by Defendant, Mr. Waguespack, and the third by Chad Sampy.[1] The vehicle being driven by Mr. Lewis, an eighteen-wheeler with a flatbed trailer, was struck from behind by the vehicle being driven by Mr. Waguespack, a crew-cab pickup truck pulling a utility trailer; this was the first impact. The vehicle being driven by Mr. Waguespack was then struck from behind by the vehicle being driven by Mr. Sampy, an eighteen-wheeler with enclosed trailer, which caused a second impact between Mr. Waguespack's vehicle and Mr. Lewis' vehicle.

Mr. Lewis filed a petition for damages against Mr. Waguespack, Proline, Mr. Waguespack's employer for whom he was driving within the course and scope

---

[1]Mr. Sampy, his employer, and its liability insurer were also named as defendants; however, Mr. Lewis' claims against these parties were settled prior to the jury trial at issue herein. Thus, this appeal only involves Mr. Lewis' claims against Mr. Waguespack.

of his employment, and Proline's insurer, Lafayette Insurance. Following a five-day jury trial[2] in February 2012, the jury returned a verdict in favor of Mr. Waguespack, finding that his negligence was not the proximate cause of the injuries suffered by Mr. Lewis. A judgment was signed in accordance with the jury's verdict. Mr. Lewis filed a motion for JNOV or, in the alternative, for a new trial, both of which were denied. In his appeal, Mr. Lewis asserts three assignments of error: (1) the jury erred in failing to find causation; (2) the jury erred in failing to award damages; and, (3) the trial judge erred in denying his JNOV.

## LAW AND DISCUSSION

### *Standard of Review as to Proximate Cause*

The determination of whether Mr. Waguespack's conduct was the proximate cause of Mr. Lewis' injuries is a factual determination which is subject to the manifest error standard of appellate review. *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So.2d 557. Consequently, a court of appeal may not set aside a jury's finding unless it is manifestly erroneous or clearly wrong. *Greer v. State ex rel. Dep't of Transp. & Dev.*, 06-417 (La.App. 3 Cir. 10/4/06), 941 So.2d 141, *writ denied*, 06-2650 (La. 1/8/07), 948 So.2d 128.

> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding; and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

*Id*. at 145.

---

[2]The collision wherein Mr. Waguespack rear-ended Mr. Lewis' vehicle—the first impact—was the incident at issue before the jury and which is presently before this court.

***Burden of Proof***

Louisiana law subjects negligence claims to the duty-risk analysis, which requires proof of a breach of duty that was the cause-in-fact of the plaintiff's injuries, resulting in plaintiff's damages. *See Jones v. Centerpoint Energy Entex*, 11-02 (La.App. 3 Cir. 5/25/11), 66 So.3d 539, *writ denied*, 11-1964 (La. 11/14/11), 75 So.3d 946. A plaintiff's failure to prove any of the required elements will result in a finding of no liability. *Id.*

Pursuant to the duty-risk analysis, Mr. Lewis bore the burden of proving: (1) that Mr. Waguespack owed him a duty; (2) that Mr. Waguespack breached that duty; (3) that Mr. Waguespack's conduct was a cause-in-fact of Mr. Lewis' injuries; (4) that Mr. Waguespack's substandard conduct was a legal cause of Mr. Lewis' injuries; and (5) that Mr. Lewis suffered actual damages. *Id.*

***Causation***

The Jury Verdict Form asked the jury whether Mr. Waguespack was negligent in causing the accident. The jury answered in the affirmative. The next question, however, asked the jury whether "any negligence on the part of [Mr. Waguespack] was a proximate cause of the damages claimed herein?" The jury answered in the negative. Deliberations ended there, and the jury returned with a verdict in favor of Mr. Waguespack, Proline, and Lafayette Insurance.

Mr. Lewis argues that the jury erroneously held that causation had not been proven. Mr. Waguespack counters, asserting that "the credibility of [Mr.] Lewis was seriously at issue, and the jury's verdict finding that he was not entitled to any damages was based solely upon credibility determinations[.]" We must decide whether the jury's finding of no causation is supported by a reasonable factual basis in the record and, if not, whether the jury was clearly wrong or manifestly erroneous.

Generally, the duty-risk analysis would require Mr. Lewis to prove the cause-in-fact element with a "but for" examination, which poses the question of whether or not Mr. Lewis' injury would have occurred "but for" Mr. Waguespack's substandard conduct. *Id.* However, "[w]here there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident." *Id.* at 548 (quoting *Perkins v. Entergy Corp.*, 00-1372, 00-1387, 00-1440, p. 8 (La. 3/23/01), 782 So.2d 606, 611).

In the present matter, two rear-end collisions occurred, and the intensity of each, or lack thereof, was a contentious issue. Mr. Lewis testified that there was only a slight difference, if any, between the forcefulness of the first impact and that of the second impact. He claimed that he felt pain in his lower back and neck immediately after the first impact.

Mr. Waguespack testified that the first impact was so slight that, initially, he was not certain that his pickup truck had even made contact with the rear of the flatbed trailer attached to Mr. Lewis' eighteen-wheeler. He rated the first impact as a three on a scale of one to ten and analogized the first impact to that of "a parking lot bump, like if I was backing out of a parking lot spot and bumped into somebody in a parking lot." Mr. Waguespack described the second impact, which occurred when the eighteen-wheeler with enclosed trailer driven by Mr. Sampy struck Mr. Waguespack's pickup truck with attached utility trailer, as considerably more forceful. According to Mr. Waguespack, immediately after both impacts, Mr. Lewis appeared uninjured and did not report being in pain to him or to anyone at the accident scene.

There were no testimonial disputes that the first impact resulted in Mr. Waguespack's vehicle coming to rest against the bumper of Mr. Lewis'

4

vehicle. The jury had the benefit of photographic evidence depicting the accident scene after the second impact. The photos show that the second impact separated Mr. Waguespack's pickup truck from the utility trailer being pulled behind it. The truck turned one-hundred-and-eighty-degrees and came to rest pointing in the opposite direction, touching the driver's side of the flatbed trailer attached to Mr. Lewis' vehicle. Mr. Waguespack's utility trailer was thrown up against the side rail of the overpass where the wrecks occurred. The utility trailer had a 2,000-pound pump secured to it with bolts. The second impact also caused the bolts to sever and the pump to be thrown completely off the utility trailer.

Mr. Sampy admitted that his vehicle, an eighteen-wheeler with enclosed trailer, was traveling nearly thirty-five miles per hour when the impact with Mr. Waguespack's pickup truck occurred. Mr. Sampy stated that he saw Mr. Waguespack's truck was pinched up against Mr. Lewis' vehicle. But, he was uncertain whether he was 200 feet away or eighty feet away when he made that observation.

Louisiana State Trooper Clifton J. Mire testified that he arrived at the accident scene and ascertained through his investigation that two impacts occurred. Only property damages were noted in his accident report. According to Trooper Mire, Mr. Lewis neither reported injury nor exhibited being injured.

Pertinent to the issue of causation, Mr. Lewis also elicited testimony at trial from Oscar F. Griffith, III, Ph.D., who was accepted as an expert in physics with an expertise in accident reconstruction analysis. According to Dr. Griffith, the impact from Mr. Waguespack's pickup truck with a flatbed trailer to the rear of Mr. Lewis' eighteen wheeler with a flatbed trailer produced major forward acceleration. Dr. Griffith described the second impact as minor compared to the contact made by the first impact. On cross examination, however, it was revealed

5

that Dr. Griffith's determination of the first impact's force entailed the estimation that Mr. Waguespack was traveling thirty-five miles per hour. When asked whether he had made any estimation of the speed of Mr. Sampy's eighteen-wheeler at the time it struck Mr. Waguespack's vehicle, Dr. Griffith admitted that he had not.

> Where there are different theories presented to the fact finder for their consideration, the fact finder's credibility determination between the two plausible theories shall not be disturbed on appeal. *Cheairs v. State ex rel. Department of Transp. and Development*, 03-0680 (La.12/3/03), 861 So.2d 536, 546. Credibility determinations, including evaluating expert witness testimony, are for the trier of fact. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc.*, 99-0201, p. 6 (La.10/19/99), 748 So.2d 417, 421.

*Detraz*, 950 So.2d at 564. "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 883." *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 12 (La. 4/3/02), 816 So.2d 270, 279.

After reviewing the record in this case, it is apparent that Mr. Lewis' version of the events of the April 28, 2007 accident vacillated between his recollection that the impacts were nearly simultaneous and, thus, equally forceful, and his account that the first impact was clearly more significant and injurious. It is plausible that the jury considered the second impact as the superceding cause of Mr. Lewis' injuries, assuming they felt Mr. Lewis was even injured. "[A] superceding cause is technically the last act of negligence and is usually determined to be the sole cause of the injury." *Johnson v. Morehouse Gen. Hosp.*, 10-387, p. 44 (La. 5/10/11), 63 So.3d 87, 117.

The record is replete with testimony and evidence in support of the jury's findings and its reasonable determination of the facts. Though Mr. Lewis presented the testimony of doctors in support of his allegations of injury, the jury

was clearly unimpressed and found his testimony self-serving and not credible. The testimonies of the three men involved in the two collisions, Mr. Lewis, Mr. Waguespack, and Mr. Sampy, conflict to such a degree that we cannot say the jury clearly erred in failing to find that Mr. Waguespack caused Mr. Lewis' injuries. Also noteworthy are the inconsistencies in Mr. Lewis' testimony relative to both his medical history and his work history, all of which was presented to the jury during trial.

The jury's determination that Mr. Waguespack acted negligently, but did not cause Mr. Lewis' injuries, is entitled to great deference on appeal. Weighing the entirety of the evidence, we conclude that the jury was not clearly wrong or manifestly erroneous in finding that Mr. Waguespack's negligence was not the proximate cause of Mr. Lewis' injuries. Having found no merit to his first assignment of error relative to causation, Mr. Lewis' second assignment of error relative to damages is rendered moot.

### Motion for Judgment Notwithstanding the Verdict

Louisiana Code of Civil Procedure Article 1811(F) provides that "[t]he motion for a [JNOV] may be granted on the issue of liability or on the issue of damages or on both issues." "The standard to be applied by the appellate courts in reviewing the grant or the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous." *Palacios v. La. & Delta R.R., Inc.*, 05-1168, p. 4 (La.App. 3 Cir. 5/3/06), 930 So.2d 1086, 1090, *writ denied*, 06-1909 (La. 11/3/06), 940 So.2d 665 (quoting *Broussard v. Stack*, 95-2508, p. 15 (La.App. 1 Cir. 9/27/96), 680 So.2d 771, 780).

Mr. Lewis contends that the trial court committed error in denying his JNOV. In ruling on Mr. Lewis' JNOV, the trial court was required to determine whether the evidence viewed in the light most favorable to Mr. Lewis pointed so

strongly and overwhelmingly in his favor that reasonable persons could not arrive at a contrary verdict on the issue of whether Mr. Waguespack caused Mr. Lewis' injuries. *See Guillory v. Saucier*, 11-745 (La.App. 3 Cir. 12/7/11), 79 So.3d 1188, *writs denied*, 12-75, 12-81 (La. 3/9/12), 84 So.3d 554, 555. Given the evidence herein, there was a reasonable basis for the jury's finding, and we are not convinced that reasonable persons could not arrive at any verdict other than the one in favor of Mr. Waguespack. We further recognize that the trier of fact is in the best position to assess the demeanor and judge the credibility of witnesses when there is conflicting testimony. *Robin v. Allstate Ins. Co.*, 03-1009, 03-926 (La.App. 3 Cir. 3/24/04), 870 So.2d 402, *writ denied*, 04-1383 (La. 9/24/04), 882 So.2d 1143 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)). Thus, we find that the trial court's denial of the JNOV was not manifestly erroneous.

**DECREE**

The judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed against Plaintiff/Appellant, Roland Lee Lewis.

**AFFIRMED.**

8